**In re INTERSTATE GRAPHICS, INC., Debtor.**

**Ruth A. SLONE-STIVER, Chapter 7 Trustee, Plaintiff,**

v.

**MAZER CORPORATION, Defendant.**

Bankruptcy No. 96–32389.
Adversary No. 97–3198.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

July 10, 1998.

Ronald S. Pretekin, Dayton, OH, for Mazer Corporation.

Ruth A. Slone-Stiver, Dayton, OH, Chapter 7 Trustee.

**DECISION ON ORDER GRANTING IN PART AND DENYING IN PART THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, DENYING MAZER CORPORATION'S MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART MAZER CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

THOMAS F. WALDRON, Bankruptcy Judge.

This matter comes before the court on the Chapter 7 Trustee's Plaintiff's Motion for Summary Judgment (Doc. 25–1) and Mazer Corporation's Motion by Mazer Corporation to Dismiss Adversary Proceeding and/or for Summary Judgment (Doc. 26–1; Doc. 26–2). The Chapter 7 Trustee's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Mazer Corporation's Motion to Dismiss is **DENIED**, and Mazer Corporation's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

Although there are several peripheral issues presented in this adversary, the central issue is the determination of the parties' prepetition and postpetition claims of setoff, which are presented in competing motions for summary judgment.

## I. FACTS

Interstate Graphics, Inc., the Debtor, is a company that prints educational materials, specializing in transparencies. In December 1995, Richard Van Houtte, president of Interstate Graphics, approached William Franklin, president of the Mazer Corporation, another printer of educational materials, to inquire if Mazer Corporation would be interested in purchasing Interstate Graphics. (Affidavit of Richard Van Houtte (Doc. 23–1); Affidavit of William Franklin (Doc. 21–1).) Upon review of Interstate Graphics' 1995 financial statements, Mr. Franklin informed Mr. Van Houtte that Interstate Graphics appeared to be insolvent, but that Mazer Corporation might still be interested in purchasing Interstate. *Id.*

In April 1996, Mr. Van Houtte informed Mr. Franklin that Interstate was having difficulty in obtaining supplies to complete existing printing contracts. *Id.* Messrs. Van Houtte and Franklin agreed to an arrangement under which Mazer Corporation would assume some of Interstate's contracts, with the customer's consent, and would pay Interstate a commission of six percent (6%) of the revenue from each contract. *Id.* A letter agreement signed by Mr. Van Houtte on April 18, 1996 provided that the commissions would be payable to Interstate Graphics upon Mazer's collection of customers' pay-

ments, and that Mazer would make advance payments to Interstate, each in the amount of $10,000.00 and payable on the following dates: April 20, 1996, May 20, 1996, June 20, 1996, and July 20, 1996. Each of these advance payments would be credited against the commissions owing to Interstate by Mazer for completed printing contracts. (Agreed Documents and Statement of Facts (Doc. 18–1), Exhibit A—Letter Agreement.) The theory behind this arrangement was that the value of Interstate's printing contracts on which Interstate had done little or no work would be maximized by having Mazer complete the contracts and pay Interstate the commission, while the value of those contracts on which Interstate needed only to assemble and/or ship, and on which Interstate did not need the support of its suppliers, would be maximized by having Interstate complete the work without Mazer's assistance. (Van Houtte Aff. (Doc. 23–1).)

Shortly after entering into the Letter Agreement, Interstate encountered difficulty completing some of the printing contracts it had retained. (Franklin Aff. (Doc. 21–1); Van Houtte Aff. (Doc. 23–1).) Mr. Van Houtte again approached Mazer for assistance in completing the printing contracts. Messrs. Van Houtte and Franklin agreed that Mazer would assist Interstate with those contracts Interstate was having difficulty completing. They agreed that Interstate would retain and bill these contracts to the customers while Mazer would charge its labor and material expenses against the commissions payable to Interstate on the contracts Mazer had assumed. *Id.*; (Affidavit of Kenneth Fultz (Doc. 24–1).) Also, by providing labor and materials directly to Interstate, Mazer alleviated Interstate's need for the four $10,000.00 cash advances payable to Interstate under the Letter Agreement, (Franklin Aff. (Doc. 21–1)). None of the contemplated $10,000.00 advance payments were actually made by Mazer. *Id.*; (Agreed Documents and Statement of Facts (Doc. 18–1).)

It was also discovered that of the contracts assumed by Mazer, Interstate had improperly bid approximately five of the printing contracts, resulting in below-cost quotes to the

customers involved. Messrs. Van Houtte and Franklin subsequently agreed to remove these contracts from the commission base. (Van Houtte Aff. (Doc. 23–1); Franklin Aff. (Doc. 21–1).) However, the printing contracts were completed at a loss because the customers involved had other outstanding contracts with Interstate, and Mr. Van Houtte did not want to risk jeopardizing the collection of the receivables on the other outstanding contracts. (Van Houtte Aff. (Doc. 23–1).)

Additionally, beginning on April 21, 1996, Mr. Van Houtte accepted a position with Mazer Corporation as a sales representative for a period of one year. (Agreed Documents and Statement of Facts (Doc. 18–1).)

On April 19, 1996, April 25, 1996, and May 14, 1996, Mazer incurred expenses of $9,167.94, $4,383.20, and $18,890.65 respectively on the completion of Interstate contracts, a total of $32,441.79. (Agreed Documents and Statement of Facts (Doc. 18–1).) For May 1996, Mazer billed sales on Interstate contracts totaling $356,358.06, resulting in a commission liability to Interstate of $21,381.48 (6% × $356,358.06). *Id.*

On May 31, 1996, an involuntary Chapter 7 petition was filed against Interstate Graphics. On July 15, 1996, the court entered an order for relief in this Chapter 7 case effective May 31, 1996. (Estate Doc. 31–1.)

The arrangements between Interstate and Mazer continued postpetition. On June 28, 1996, Mazer incurred $348.00 in expenses in assisting Interstate with contracts that Interstate had retained, while for the month of June, Mazer billed sales on assumed Interstate contracts of $648,472.64, resulting in commission liability of $38,908.36 (6% × $648,472.64). (Agreed Documents and Statement of Facts (Doc. 18–1).) On July 3, 1996 and July 31, 1996, Mazer incurred expenses of $2,200.00 and $2,000.00 respectively. *Id.* For the month of July 1996, Mazer billed sales totaling $85,326.80, resulting in commission liability of $5,119.61 (6% × $85,326.80). *Id.* For the month of August 1996, Mazer billed $34,911.51 on assumed Interstate contracts, resulting in a commission liability to Interstate of $2,094.69 (6% × $34,911.51). *Id.* These transactions resulted in total post-

petition expenses of $4,548.00, and a total postpetition commission liability of $46,-122.66.

The Interstate contracts assumed by Mazer included work for McGraw–Hill Companies (a.k.a. Glencoe). On July 19, 1996, McGraw–Hill mistakenly paid $18,300.15 which was due Mazer into an Interstate Graphics account at Provident Bank. *Id.* These funds were in payment for an Interstate contract that was completed by Mazer, and the funds should have been paid directly to Mazer instead of to Interstate. *Id.* On August 6, 1996, McGraw–Hill paid an additional $18,994.21 into Interstate's Provident account. *Id.* These funds also should have been paid directly to Mazer. *Id.* The total of the two checks, $37,294.36, remained in interstate's account when the Chapter 7 Trustee, Ruth A. Slone-Stiver, collected the entire account from Provident on September 16, 1996. *Id.* The Trustee does not dispute that these funds should have been paid directly to Mazer Corporation by McGraw–Hill.

On October 3, 1996, Mazer paid the Chapter 7 Trustee $32,821.24 in commissions on completed Interstate contracts. *Id.* On January 29, 1997, the Trustee moved the court for authorization to return to Mazer Corporation the $37,294.36 that McGraw–Hill mistakenly paid into Interstate's account at Provident Bank. (Estate Doc. 58–1.) On February 18, 1997, the Lustro Company, a petitioning creditor, objected to the Trustee's motion to return the funds to Mazer on the basis that Mazer failed to make any of the $10,000.00 advance payments to Interstate, and that before the Trustee should be authorized to return any funds to Mazer, it would be necessary for Mazer to supply a full and complete accounting to determine if Mazer had any outstanding liability to Interstate, (Estate Doc. 62–1.) On May 6, 1997, the court entered an Order Fixing Filing Dates (Estate Doc. 69–1) which directed the Chapter 7 Trustee to present an agreed entry resolving the issues surrounding the disposition of the funds or to file an appropriate adversary complaint not later than June 30, 1997.

On July 1, 1997, the Trustee filed an adversary complaint seeking to retain the funds in question for the benefit of the estate. On February 13, 1998, the Chapter 7 Trustee filed Plaintiff's Motion for Summary Judgment (Doc. 25–1). Also on February 13, 1998, Mazer Corporation filed a Motion by Mazer Corporation to Dismiss Adversary Proceeding and/or for Summary Judgment (Doc. 26–1; Doc. 26–2).

## II. JURISDICTION

In accordance with the Standing Order of Reference entered in this district on July 30, 1984, the court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a) and (b). The within matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate; § 157(b)(2)(E)—orders to turn over property of the estate; and § 157(b)(2)(O)—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.

## III. DISCUSSION

Mazer argues in its Memorandum in Support of Motion by Mazer Corporation to Dismiss Adversary Proceeding and/or Motion for Summary Judgment (Doc. 27–1) that the adversary should be dismissed because of the Chapter 7 Trustee's failure to properly serve Mazer Corporation and/or because the Trustee failed to comply with the court's deadline to file the adversary complaint. In the alternative, Mazer argues that it should be permitted to setoff pre- and postpetition commissions against pre- and postpetition expenses. Under Mazer's calculations pertaining to prepetition activity, Mazer incurred prepetition expenses of $32,441.79 and prepetition commission liability of $21,-381.48, leaving a net claim payable to Mazer in the amount of $11,060.31. As to postpetition activity, Mazer asserts that it incurred postpetition expenses of $4,548.00 and commission liability of $46,122.66. This results in a net claim payable to Interstate in the amount of $41,574.66, which when reduced by the $32,821.24 Mazer paid the Trustee on October 3, 1996, leaves a balance of $8,753.42

owing to Interstate. Based on these calculations, Mazer asserts that it is entitled to receive from the Trustee the sum of $28,540.94, which is the difference between the $8,753.42 that Mazer still owes Interstate and the $37,294.36 that McGraw–Hill mistakenly paid into Interstate's account and which is still held by the Trustee.

In her Plaintiff's Motion for Summary Judgment, the Trustee appears to argue that the Letter Agreement executed on April 18, 1996 controls the entire series of transactions between Interstate and Mazer, notwithstanding Messrs. Van Houtte and Franklin's modifications and subsequent agreements. The Trustee also points out that Mr. Van Houtte was an employee of Mazer at the time he agreed to the various modifications of the Letter Agreement, and asserts that Mr. Van Houtte's actions amount to a breach of the fiduciary duties he owed to Interstate as president of the corporation. The Trustee further argues that no prepetition claims arose in favor of Interstate which Mazer can use as a setoff against its prepetition expenses on Interstate contracts because the Letter Agreement provided that commissions became payable to Interstate upon Mazer's collection from the customer, and Mazer did not actually collect these funds prepetition. As to Mazer's postpetition expenses, the Trustee asserts that she was never contacted regarding these expenses and did not authorize Mazer to incur any such expense on behalf of Interstate.

## A. Mazer's Motion to Dismiss.

■ Mazer first argues that the Trustee's complaint should be dismissed because the Trustee failed to commence the action in accordance with the court's Order Fixing Filing Dates (Estate Doc. 69–1), which provides:

> Upon consideration of the information and arguments of counsel, **IT IS ORDERED** that the Chapter 7 Trustee shall, **not later than June 30, 1997**, present to the court an Agreed Order providing for the resolution of the issues involving the Chapter 7 Trustee and the Mazer Corporation or, by that date, file with the court any motion proposing to resolve the issues or an adversary complaint.

> Failure to comply with the terms of this order may result in the imposition of sanctions (LBR 9011–3).

The Trustee did not file the within action until July 1, 1997.

Local Bankruptcy Rule 9011–3 provides in pertinent part: "Upon notice and hearing, sanctions may be imposed when it is determined that noncompliance with these local rules or other applicable rules or statutes has, without just cause, obstructed the effective conduct of the business of the court or of the bankruptcy system." LOCAL RULE 9011–3. The court notes the Trustee's filing is not barred by any applicable statute of limitations. The court finds that the Trustee's filing the adversary one day late, while failing to comply with the court's order, did not obstruct the effective conduct of the business of the court or of the bankruptcy system, nor has Mazer asserted or demonstrated any prejudice as a result of the Trustee's one day late filing. Accordingly, Mazer's motion to dismiss the Trustee's complaint on the basis that the Trustee failed to comply with the court's order is denied.

Mazer next points out that the Trustee failed to certify service on Mazer Corporation at the time she filed the adversary complaint, and that the Trustee has since failed to obtain service on Mazer Corporation in accordance with Bankruptcy Rule 7004, although the Trustee did obtain service on Mazer's attorney at the time she filed the complaint. In its answer to the Trustee's complaint, Mazer properly raised insufficiency of service of process as a defense pursuant to Federal Rule of Civil Procedure 12(b)(5), as incorporated by Bankruptcy Rule 7012(b).

■ Mazer's attorney did not become an authorized agent to receive service of process on behalf of Mazer Corporation simply by being counsel of record. *Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 39 (Bankr.E.D.N.Y.1996). However, "[c]ourts have been reluctant to read excessive strictness into the notice provisions of the Bankruptcy Rules if service was 'reasonably calculated' to reach the defendant." *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.)*, 172 B.R. 170, 177 (Bankr.

E.D.N.Y.1994). "[T]he notice that is required by due process is that which is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (citations omitted). "Furthermore, 'the standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" *Id.* (citations omitted).

Also, a defense under Rule 12(b), even when properly raised initially, can be waived through conduct of the party "demonstrating that it unmistakingly submitted itself to the jurisdiction of the ... court." *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund,* 967 F.2d 688, 692 (1st Cir.1992). Therefore, actively participating in a case by filing documents addressing the merits of the controversy and otherwise taking part in substantive determinations waives a party's Rule 12(b) defense. *Id.* at 692–693 (collecting cases).

■ Mazer Corporation has actively participated in all stages of this action, including actively litigating the parties' cross motions for summary judgment now before the court. Mazer has made no showing that it has suffered any prejudice as a result of the Trustee's failure to obtain proper service or that it has otherwise been prevented from fully asserting any defenses it wishes to raise in response to the allegations contained in the Trustee's complaint. In the circumstances of this proceeding, insufficiency of service of process does not provide a basis for dismissal. The court concludes, despite the Trustee's inattention to filing and service requirements, which unnecessarily increased the issues in this proceeding, Mazer's motion to dismiss is denied.

**B. Summary Judgment.**

Having denied Mazer Corporation's motion to dismiss, the issues are before the court on the parties' cross motions for summary judgment. The Bankruptcy Appellate Panel of the Sixth Circuit recently explained the operation of motions for summary judgment in adversary proceedings:

> Summary judgment in adversary proceedings is governed by Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. FED. R. BANKR. P. 7056. The Sixth Circuit has succinctly described the proceedings on a motion for summary judgment as follows:

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving part may discharge its burden by "pointing out to the [bankruptcy] court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett,* 128 F.3d 418, 421–422 (6th Cir.1997) (internal citations omitted).

A material fact is one whose resolution will affect the determination of the underlying action. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996) (citation omitted). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American*

*Eng'g Co.*, 33 F.3d 727, 730 (6th Cir.1994) (citations omitted).

*Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 198 (6th Cir. BAP 1998) (alterations in original).

### 1. The Trustee's Motion for Summary Judgment—Breach of Fiduciary Duty.

The Trustee asserts that permitting Mazer to recover any amount is inappropriate because Mr. Van Houtte's actions were so influenced by the fact that he was an employee of Mazer at the time he was acting as president of Interstate as to amount to a breach of the fiduciary duties he owed to Interstate as an officer of that corporation. An unspoken assumption in the Trustee's argument is that, if Mr. Van Houtte had breached any fiduciary duties to Interstate, such a breach would be grounds for the Trustee to recover directly from Mazer Corporation in the form of being permitted to retain Mazer's funds. The court further notes that, although the Trustee's allegations of misconduct appear to center on Mr. Van Houtte and, to a lesser extent, on Mr. Franklin, Mr. Van Houtte has never been a party to this adversary proceeding, and the Trustee's claims against Mr. Franklin, who was originally joined as a defendant, have been dismissed with prejudice. However, a brief discussion of the applicable substantive law and the respective burdens of the parties in this summary judgment proceeding reveals that the Trustee's contentions are without merit, making it unnecessary to address the additional issues arising from the manner in which the Trustee chose to present this action to the court.

■ Ohio law requires directors and officers to "perform their duties in good faith and in a manner they reasonably believe to be in the best interests of the corporation." *Koos v. Central Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 641 N.E.2d 265, 272 (1994). However, even where an officer or director is not disinterested or has engaged in self-dealing, the officer's or director's actions are not automatically void by reason of the lack of disinterestedness or by the self-dealing nature of the transaction. *Id.* 641 N.E.2d at 273. "In such a case, 'the [officer or director] will be required to show that the

transaction was fair and reasonable to the corporation notwithstanding his or her personal interest.'" *Id.* (citation omitted). *See also Pittsburgh Terminal Corp. v. Baltimore and Ohio R.R.*, 662 F.Supp. 430 (N.D.Ohio 1987) (holding that officers and directors did not violate fiduciary duties of care and loyalty where the transaction in question was fair and reasonable to the corporation).

Although the court must draw all inferences in favor of the Trustee in determining this motion for summary judgment, the Trustee is required to "present significant and probative evidence in support of [her] complaint. The mere existence of a scintilla of evidence in support of the [Trustee's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [Trustee]." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997) (internal quotation marks and citations omitted).

■ Through the affidavits of the participants, Mazer has presented evidence demonstrating that Interstate could not have completed the printing contracts which were assumed by Mazer, and also could not have completed the contracts on which Mazer assisted without such outside assistance. The Trustee, however, has failed to present any evidence upon which the court could reasonably find that Mr. Van Houtte's agreements with Mr. Franklin were not fair and reasonable to Interstate. Specifically, the Trustee has offered no evidence upon which the court could reasonably conclude that the Interstate contracts assumed by Mazer would have been more valuable if left in Interstate's hands. The uncontradicted evidence presented by the parties in connection with their respective motions for summary judgment indicates that Interstate was unable to complete the contracts which Mazer assumed or assisted in completing, compelling the conclusion that Interstate would have realized little or nothing on these contracts had Mr. Van Houtte not negotiated the agreements at issue with Mr. Franklin. Regarding the Trustee's further assertion that certain of Mazer's prepetition charged-back expenses did not result in any benefit to Interstate, the Trustee has further failed to offer any evidence upon which this court

could reasonably conclude that prepetition circumstances existed which would make Mr. Van Houtte's attempt to complete outstanding printing contracts in an effort to maintain Interstate's customer base either unfair or unreasonable to Interstate. Accordingly, summary judgment on this issue will be entered in favor of Mazer Corporation, and Mazer will be permitted to recover any funds in the Trustee's possession to which it is entitled under applicable law. *See Gibson,* 219 B.R. at 200 (affirming the entry of summary judgment against a party who failed to adduce evidence in her favor sufficient to counter evidence supporting a determination against her).

### 2. Mazer's Motion for Summary Judgment—Setoff and Ohio Law.

Mazer and Interstate each have outstanding obligations to the other as to both pre- and postpetition transactions. Mazer argues that it should be permitted to setoff such obligations as appropriate, and further, that its postpetition claims against Interstate should be setoff against the $37,294.36 of Mazer's funds still held by the Trustee that McGraw–Hill mistakenly paid into Interstate's Provident account. Mazer will be entitled to summary judgment if it can demonstrate that there are no genuine issues of material fact and that Mazer is entitled to judgment as a matter of law.

The Bankruptcy Code allows for the setoff of mutual obligations. Section 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).

Section 553 permits the prepetition debts of a creditor to be setoff against mutual prepetition debts of the debtor. *In re Kleather,* 208 B.R. 406, 414 (Bankr. S.D.Ohio 1997). Likewise, a debtor's postpetition debts may be setoff against a creditor's mutual postpetition debts. *In re Seal,* 192

B.R. 442, 457 (Bankr.W.D.Mich.1996). However, prepetition obligations may not be setoff against postpetition obligations. *Kleather,* 208 B.R. at 414.

> [T]he Bankruptcy Code does not create a right of setoff, but instead preserves a conditioned state law right.

> In order to exercise a state law right of setoff in bankruptcy, the creditor must establish

> 1) A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; 2) A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; 3) The debt and claim are mutual obligations; and 4) A right to setoff the debts under non-bankruptcy law.

> As to the final condition, under Ohio law a setoff "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts. by way of mutual deduction."

*Kleather,* 208 B.R. at 413 (citations omitted). *See also Walter v. National City Bank,* 42 Ohio St.2d 524, 330 N.E.2d 425, 427 (1975) ("Setoff, both at law and in equity, is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction.").

The Letter Agreement provides that the six percent commission liability incurred by Mazer when it completes an Interstate contract becomes payable to Interstate when Mazer collects payment from the customer. (Agreed Documents and Statement of Facts (Doc. 18–1), Exhibit A—Letter Agreement.) Although Mazer completed some Interstate contracts prepetition and accrued commission liability on its books prepetition (Affidavit of Richard Schuman (Doc. 22–1)), Mazer did not actually receive customers' payments on any of these contracts until postpetition. The Trustee argues that because Mazer did not actually receive any customer payments on Interstate contracts prepetition, Mazer did not incur any prepetition commission liability

to Interstate which could be the subject of setoff against prepetition Interstate liabilities to Mazer. Mazer counters the Trustee's argument by asserting that setoff under § 553 deals with claims in bankruptcy and that the Bankruptcy Code's broad definition of claim, which includes contingent and unmatured debts (*see* 11 U.S.C. § 101(5); *Gibson*, 219 B.R. at 202), should control the determination of which claims may be the subject of setoff in bankruptcy.

 However, the court must look to Ohio law to determine whether the obligations at issue may be the subject of setoff between the parties. The Supreme Court of Ohio has noted the "the well established rule that a setoff must have been a subsisting right at the time it is utilized," and held that "[w]here an obligation is not enforceable in an action at law, it cannot be set off against an opposing claim." *Kocsorak v. Cleveland Trust Co.*, 151 Ohio St. 212, 85 N.E.2d 96, 100 (1949). *See also Walter v. National City Bank*, 42 Ohio St.2d 524, 330 N.E.2d 425, 427 (1975) and *Witham v. South Side Bldg. & Loan Ass'n*, 133 Ohio St. 560, 15 N.E.2d 149, 150 (1938) (both requiring that each party "owe[] a definite amount to the other" for setoff to apply); *Frost v. Mihm*, No. 95–CA–38, 1995 WL 737914, at *2 (Ohio App. Nov. 15, 1995) (holding as a prerequisite to setoff that each party have the right to recover from the other); *Blackwell v. International Union United Auto Workers Local No. 1250*, 21 Ohio App.3d 110, 487 N.E.2d 334, 337 (1984) (holding setoff inapplicable where the defendant did not have an enforceable independent claim). Accordingly, a contingent or unmatured obligation which is not presently enforceable cannot be the subject of setoff under Ohio law. *See, e.g., Walter*, 330 N.E.2d at 428 ("An unmatured debt is not presently due or collectible and is not available for setoff, since setoff would alter the contract made by the parties.").

### a. Setoff of Prepetition Obligations.

 The uncontradicted evidence before the court on the parties' cross motions for summary judgment establishes that Mazer incurred a total of $21,381.48 in commission liability on Interstate contracts which Mazer assumed and completed prepetition, but upon which Mazer received payment postpetition, and a total of $32,441.79 in prepetition expenses related to assisting Interstate with contracts not assumed by Mazer. Although Mazer "accrued" commission liability to Interstate on its books as Mazer completed Interstate printing contracts prepetition, the Letter Agreement negotiated between Mazer and Interstate provided that the six percent commission liability did not become payable to Interstate until Mazer actually collected payment from the end customer. Thus, commission liability under the Letter Agreement could not be enforced in an action at law against Mazer until Mazer collected payment on a contract. Mazer collected no such payments prepetition. Therefore, Mazer cannot use the commission liability arising from printing contracts completed prepetition as a setoff against expenses that Mazer incurred prepetition in assisting Interstate with other contracts.

The court notes the rule that an obligation must be presently enforceable in order for setoff to apply is subject to a limited exception based upon principles of equity where the obligation has not matured because of the obligor's intervening insolvency. In such cases, "[l]ack of maturity is not always permitted to defeat the right of setoff where that right is the only way to prevent clear injustice, and the courts have frequently applied equitable principles in cases of insolvency." *Walter*, 330 N.E.2d at 428–429.

However, Mazer became aware of Interstate's insolvency approximately two months prior to the prepetition transactions at issue when Mr. Franklin reviewed Interstate's financials in February 1996. (Franklin Aff. (Doc. 21–1).) As noted in *Walter*, "no equity accrues where insolvency did not 'intervene' but occurred prior to the voluntary [transaction which is urged as a basis for setoff]." *Walter*, 330 N.E.2d at 429. Further, to the extent that the involuntary Chapter 7 petition filed against Interstate could be considered an intervening insolvency, the court declines to apply any such equitable exception based upon the facts in this adversary. Mazer has not presented any evidence upon which the court could reasonably conclude

that allocating the parties' financial responsibilities into their pre- and postpetition components as mandated by the Bankruptcy Code works a clear injustice against Mazer. The court further notes that disallowing Mazer's use of commission liability as a prepetition setoff does not leave Mazer unable to collect its prepetition expenses. Disallowing the prepetition setoff urged by Mazer simply requires Mazer to present a claim against the Chapter 7 estate and share in whatever distribution is available on the same terms as Interstate's other unsecured creditors.

Accordingly, the $32,441.79 in prepetition expenses which Mazer incurred while assisting Interstate with contracts not assumed by Mazer constitute an unsecured prepetition claim by Mazer against Interstate. The $21,381.48 in commission liability on Interstate contracts which Mazer assumed and completed prepetition, but upon which payment was collected postpetition, constitute a postpetition obligation of Mazer to Interstate.

### b. Setoff of Postpetition Obligations.

In addition to the $21,381.48 in commission liability on Interstate contracts which Mazer assumed and completed prepetition, but which became payable to Interstate postpetition, the uncontradicted evidence before the court on the parties' cross motions for summary judgment further establishes that Mazer incurred an additional $46,122.66 in postpetition commission liability. This results in a total postpetition commission liability of $67,504.14 owing from Mazer to Interstate. As noted above, Mazer paid the Trustee $32,821.24 in commission liability on October 3, 1996. Accordingly, Mazer remains obligated to Interstate in the amount of $34,682.90 in outstanding commission liability.

The Trustee continues to hold the $37,294.36 of Mazer's funds that McGraw–Hill mistakenly paid into Interstate's account at Provident Bank. The uncontradicted evidence further establishes that Mazer incurred postpetition expenses of $348.00, $2,200.00, and $2,000.00 on June 28, 1996, July 3, 1996, and July 31, 1996 respectively in assisting Interstate with completing printing contracts that Interstate retained. The Trustee argues that Mazer is not entitled to reimbursement of these expenses totaling $4,548.00 because Mazer did not contact the Trustee for authorization to incur the expenses nor did the expenses benefit the estate. However, the Trustee was not appointed in this case until September 4, 1996, after all of the postpetition expenses at issue had already been incurred through the continued operation of Interstate's business (see 11 U.S.C. § 303(f)). Further, the Trustee was not authorized by this court to operate the business of Interstate such that her approval would have been necessary for Mazer to incur postpetition expenses as it assisted Interstate with printing contracts pursuant to the parties' prepetition agreement (see 11 U.S.C. § 721). Additionally, the Trustee has not presented any evidence upon which the court could reasonably conclude that these postpetition expenses did not benefit the estate. Accordingly, Interstate must reimburse Mazer for the $4,548.00 in postpetition expenses Mazer incurred. When the postpetition expenses ($4,548.00) are added to the McGraw–Hill funds ($37,294.36), Interstate's total obligation to Mazer becomes $41,842.36.

The outstanding liabilities between Mazer and Interstate are mutual obligations, all of which arose postpetition. See Kleather, 208 B.R. at 413; Seal, 192 B.R. at 457. Under Ohio law, Mazer and Interstate "each ... owe[] a definite amount to the other," giving rise to "that right which exists between two parties ... to set off their respective debts by way of mutual deduction." Walter, 330 N.E.2d at 427. See also Kleather, 208 B.R. at 413. Accordingly, setoff is appropriate pursuant to § 553 of the Bankruptcy Code.

Interstate's postpetition obligations to Mazer total $41,842.36, while Mazer's reciprocal obligations total only $34,682.90. When these obligations are setoff by way of mutual deduction, Mazer is left with an outstanding claim against Interstate in the amount of $7,159.46. The following is a summary of the court's determination regarding setoff between the parties.

**INTERSTATE'S OBLIGATIONS TO MAZER**

| | | |
|---|---:|---:|
| McGraw–Hill Funds Belonging to Mazer but Retained by Trustee | $37,294.36 | |
| Postpetition Expenses Incurred on Interstate Contracts | $4,548.00 | |
| | | $41,842.36 |

**MAZER'S OBLIGATIONS TO INTERSTATE**

| | | |
|---|---:|---:|
| Prepetition Contracts (But Payment Collected Postpetition) | $21,381.48 | |
| Postpetition Contracts | $46,122.66 | |
| Oct. 3, 1996 Commission Payment to Trustee | ($32,821.24) | |
| | | ($34,682.90) |
| **SETOFF AMOUNT:** | | **$7,159.46** |

---

Accordingly, the Chapter 7 Trustee will be directed to remit payment to Mazer Corporation in the amount of $7,159.46.

## IV. CONCLUSION

The Plaintiff's Motion for Summary Judgment (Doc. 25–1) filed by the Chapter 7 Trustee is **GRANTED** in part and **DENIED** in part. Mazer Corporation's motion to dismiss as presented in the Motion by Mazer Corporation to Dismiss Adversary Proceeding and/or for Summary Judgment (Doc. 26–1; 26–2) is **DENIED**. Mazer Corporation's motion for summary judgment as contained in the Motion by Mazer Corporation to Dismiss Adversary Proceeding and/or for Summary Judgment (Doc. 26–1; 26–2) is **GRANTED** in part and **DENIED** in part. The Chapter 7 Trustee shall, **not later than ten days from the date of this decision,** remit to Mazer Corporation the amount of $7,159.46.

An order in accordance with this decision is simultaneously entered.

**SO ORDERED.**