**In re ROBERDS, INC., Debtor.**

**Roberds, Inc., Debtor/Plaintiff,**

v.

**Lumbermen's Mutual Casualty Company, Defendant.**

**Bankruptcy No. 00–30194.**
**Adversary No. 00–3207.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Oct. 10, 2002.

Nick V. Cavalieri, Columbus, OH, for Plaintiff/Respondent, Roberds, Inc.

Robert B. Berner, Kettering Tower, Dayton, OH, for Plaintiff/Respondent, Roberds, Inc.

John V. Burch, P.C., Atlanta, GA, for Defendant/Movant, Lumbermen's Mutual Casualty Company.

Dianne F. Marx, Dayton, OH, for Defendant/Movant, Lumbermen's Mutual Casualty Company.

Steven E. Fox, New York City, for Official Unsecured Creditors' Committee.

Lawrence S. Walter, Dayton, Oh, for Official Unsecured Creditors' Committee.

### DECISION ON ORDER GRANTING SUMMARY JUDGMENT ON THE SETOFF CLAIM OF DEFENDANT/MOVANT, LUMBERMEN'S MUTUAL CASUALTY COMPANY

THOMAS F. WALDRON, Bankruptcy Judge.

#### Introduction

The issue before the court is presented by Lumbermen's Mutual Casualty Compa-

ny's ("Lumbermen's") Motion for Summary Judgment on the Set–Off Claim [Doc. 50–1]. Roberds, Inc., the Debtor ("Roberds" or the "Debtor"), was insured under a Commercial Crime policy issued by Lumbermen's. Lumbermen's also provided the Debtor with surety bonds, most notably for workers compensation claims for Florida and Georgia. Under the terms of these bonds, Lumbermen's paid for certain costs and was entitled to indemnification by Roberds. Before Roberds filed for Chapter 11 (January 19, 2000), the Debtor filed a Proof of Loss against the Commercial Crime policy for a claimed employee theft ring at a Roberds warehouse near Atlanta. For a variety of reasons, Lumbermen's denied coverage under the policy.

Subsequently, the Debtor filed an adversary proceeding alleging two different types of claims: (1) breach of contract (theft policy) and (2) tort claims of bad faith and illusory coverage. The breach of contract claim is for $602,789.00, plus interest, costs and attorney fees.[1] Lumbermen's has claimed over $875,619.00 for indemnification from the Debtor for bonds issued in favor of the Debtor. Lumbermen's position is that the debtor's breach of contract claim is pre-petition and would be completely setoff by the pre-petition claim of Lumbermen's for indemnification under the bonds. The Debtor's position is setoff cannot be established on a motion for summary judgment because (1) the breach of contract claim is a post-petition claim under Ohio law and, therefore, cannot be setoff against the pre-petition bond indemnification claim of Lumbermen's and (2) even if setoff was otherwise appropriate as a matter of law, the proper amount

of the setoff is in factual dispute. The parties agree that the tort claims of Roberds are post-petition and not subject to setoff. This decision only determines the breach of contract/setoff claims. The tort claims await future proceedings. The court concludes any breach of contract claim of the Debtor is a pre-petition claim which is subject to setoff by Lumbermen's bond indemnification claim.

### *Jurisdiction*

This proceeding arises in a case referred to this court by the Standing Order Of Reference entered in this district on July 30, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

### *Background*

On December 20, 2000, the Debtor filed a "Complaint For Breach of Contract And For Other Relief [Adv. Doc. 1–1]." The Debtor asserts four causes of action: breach of contract, breach of implied covenant of good faith and fair dealing, bad faith and illusory coverage. On February 1, 2001, Lumbermen's filed an answer, denying all of the substantive allegations of the complaint [Adv. Doc. 4–1]. On February 14, 2001, Lumbermen's filed a "Motion for Relief from Automatic Stay to Assert Right of Set-off [Doc. 926–1]." On March 5, 2001, the Debtor filed a memorandum in opposition to the motion [Doc. 960–1]. On March 7, 2001, Lumbermen's filed an amended motion. On March 15, 2001, Debtor filed a memorandum in opposition to the amended motion [Doc. 971–1]. Pursuant to an agreed order, the automatic stay was terminated to allow Lumbermen's to assert any setoff rights, but no merit

---

**1.** The parties stipulated that "Lumbermens, for purposes of the determination of the bifurcated setoff issue, neither challenges the merits of Roberds' Claim nor asserts that Roberds failed to comply with its obligations under the Policy or under applicable law." [Doc. 53–1; Stipulation 12]

determination regarding setoff was made [Doc. 988-1]. After a series of pre-trial conferences, the court ordered the parties to brief whether the setoff issue could be bifurcated from the tort claims and whether summary judgment could be an appropriate mechanism to attempt to resolve the setoff issue. The procedural path of this adversary was to be resolved at a pre-trial conference, scheduled for November 1, 2001 [Adv. Doc. 19-1]; however, by agreed order, the pre-trial conference was continued until December 6, 2001 [Adv. Doc. 20-1]. Both parties filed preliminary memoranda on this issue [Adv. Doc. 21-1 and 22-1]. Lumbermen's filed a "Correction" to its initial memorandum [Adv. Doc. 23-1]. Both parties filed responses to the initial memoranda [Adv. Doc. 24-1 and 26-1]. On December 6, 2001, the court, in an oral decision, ruled that Lumbermen's could have a valid setoff claim and summary judgment was an appropriate vehicle that could resolve that issue.

The court issued an order outlining a briefing schedule [Adv. Doc. 27-1]. This schedule was subsequently modified by agreed order after the Debtor chose to oppose Lumbermen's motion for summary judgment, but not file a separate cross-motion [Adv. Doc. 57-1]. The parties have filed all the relevant documents and this matter is now ripe for decision. See Lumbermen's Mutual Casualty Company's Request To Plaintiff To File Original Discovery [Adv. Doc. 49-1]; Lumbermen's Mutual Casualty Company's Motion for Summary Judgment On The Setoff Claim [Adv. Doc. 50-1]; Brief In Support of Lumbermen's Mutual Casualty Company's Motion for Summary Judgment on Its Setoff Claim [Adv. Doc. 51-1]; Lumbermen's Mutual Casualty Company's Notice of Filing Of Original Discovery [Adv. Doc. 52-1]; Stipulations Of Fact Relating To The Summary Judgment Motion(s) Filed On The Setoff Issue [Adv. Doc. 53-1]; Affida-vit of Steven G. Mollenhauer In Support Of Lumbermen's Mutual Casualty Insurance Company's Motion for Summary Judgment On The Set-Off Issue [Adv. Doc. 54-1]; Affidavit Of Steve Squatrito In Support Of Lumbermen's Mutual Casualty Company's Motion for Summary Judgment On The Setoff Issue [Adv. Doc. 55-1]; Debtor's Memorandum in Opposition to Defendant's Motion for Summary Judgment on the Defendant's Setoff Claim [Adv. Doc. 60-1]; Lumbermen's Memorandum In Reply To Roberds' Opposition To Lumbermens' Motion For Summary Judgment On The Setoff Claim [Adv. Doc. 69-1]; Additionally, three depositions were filed by the Debtor: John P. Reale, Debra Johnson Compton and Steven G. Mollenhauer [Adv. Docs. 61-63]. See Notice Of Filing Of Depositions [Adv. Doc. 64-1]

Lumbermen's insured the Debtor under a "commercial crime policy of insurance," policy number 3F 934 092-00 for the period of March 31, 1998 through March 31, 2001. The policy provisions covered employee theft. The Debtor alleges inventory shortages were higher at its Georgia distribution center than its Fairborn or Tampa locations. After increasing security, the debtor discovered three employee theft rings. All of these events occurred in 1999 (pre-petition). On January 19, 2000, the Debtor filed its petition for Chapter 11. On February 22, 2000, Wayne Hawkins, Roberds treasurer (at all times relevant to the stipulations of parties), requested an extension until April 22, 2000 to file "Proof of Loss" forms. Based on the claimed thefts, the debtor submitted a "Proof of Loss Package" to Lumbermen's in the amount of $602,789.00 on March 21, 2000. As summarized by the parties in Stipulation 10: "All of the losses which are included in Roberds' Claim occurred and were discovered in 1999, al-

though Roberds did not calculate the final amount of its loss until a later date." Lumbermen's denied this claim on October 3, 2000.

In addition to the insurance policy, Lumbermen's issued bonds in favor of the Debtor for certain workers compensation, utility and warranty obligations. Under an General Agreement of Indemnity signed and agreed to by the Debtor and Lumbermen's on April 1, 1998, the Debtor agreed to indemnify Lumbermen's for all losses incurred by Lumbermen's as a result of the bonds.

Based on the affidavit of Steven G. Mollenhauer (including related exhibits) [Adv. Doc. 54–1], the following bonds were issued by Lumbermen's:

| OBLIGEE | PENAL SUM · | DATE |
|---|---|---|
| Florida—Dept. of Labor Employment Security, Division of Workers Compensation | $590,000.00 | 07–23–98 |
| Georgia—Self Insurers Guaranty Trust Fund | $250,000.00 | 06–07–99 |
| Florida Power Corporation | $ 55,665.00 | 06–14–99 |
| Tampa Electric Company | $ 55,400.00 | 06–14–99 |
| Insurance Commissioner of Georgia (Home Warranty Bond) | $100,000.00 | 06–07–99 |

Lumbermen's (in the Mollenhauer affidavit) shows it made the following payments (and incurred the following losses) on the bonds: [2]

| OBLIGEE | AMOUNT PAID |
|---|---|
| Florida—Dept. of Labor Employment Security, Division of Workers Compensation | $590,000.00 |
| Georgia—Self Insurers Guaranty Trust Fund | $250,000.00 |
| Florida Power Corporation | $ 9,349.74 |
| Tampa Electric Company | $ 23,624.32 |
| Insurance Commissioner of Georgia (Home Warranty Bond) | $ 750.00 and $ 1,895.00 (separate checks) = $ 2,645.00 |
| **TOTAL AMOUNT PAID** | **$875,619.06** |

### *Summary Judgment*

Summary judgment in an adversary proceeding is governed by Bankruptcy Rule 7056, incorporating Rule 56 of Federal Rules of Civil Procedure. The standard for summary judgment is:

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test the moving party may discharge its burden by "pointing out to the [bankruptcy] court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the

**2.** Lumbermen's payments of these amounts is not disputed. Lumbermen's also claims $6,940.65 in attorney fees related to bond claims. However, the validity of these attorney fees is not necessary to decide the motion for summary judgment. The court express no opinion in regard to the attorney fee claim.

[nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (6th Cir. BAP 1998), *citing, Hall v. Tollett,* 128 F.3d 418, 421–22 (6th Cir. 1997) (internal citations omitted).

A material fact is one whose resolution will affect the determination of the underlying action. An issue is genuine if a rational trier of fact could find in favor of either party on the issue. "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir. 1994)

*Gibson* at 198–99 (internal citations omitted).

### Analysis

#### 1. 11 U.S.C. § 553

■ The Bankruptcy Code, in 11 U.S.C. § 553, states that:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

Section 553 does not create the right of setoff, but preserves state law setoff rights. *Slone–Stiver v. Mazer Corp. (In re Interstate Graphics),* 223 B.R. 116, 124 (Bankr.S.D.Ohio 1998). "Section 553 permits the prepetition debts of a creditor to be setoff against mutual pre-petition debts of the debtor." *Id., citing, In re Kleather,* 208 B.R. 406, 413 (Bankr.S.D.Ohio 1997) In order for a creditor to exercise a state law

right of setoff under § 553, the creditor must show:

1) A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; 2) A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; 3) The debt and claim are mutual obligations; and 4) A right to setoff the debts under nonbankruptcy law.

*Id.*

#### 2. Are The Claims of Roberds and Lumbermen's Both Pre–Petition Claims under Federal Bankruptcy Law?

■ Both parties agree that any indemnification owed by Roberds to Lumbermen's under the General Agreement of Indemnity is a pre-petition claim. *In re Larbar,* 177 F.3d 439 (6th Cir.1999) (The parties also agree that any bad faith claim asserted by the Debtor would be a post-petition claim and could not be setoff under the General Agreement of Indemnity.) The Debtor alleges, however, its breach of contract claim is a post-petition claim, which did not arise until the Proof of Loss package was filed on March 21, 2000 and/or Lumbermen's denied the claim on October 3, 2000. Lumbermen's alleges the breach of contract claim is pre-petition and, therefore, Lumbermen's claims under the General Agreement of Indemnity can be properly setoff against any breach of contract claim of the Debtor.

■ The court notes that whether a claim is pre-petition or post-petition is a matter of federal law. *Grady v. A.H. Robins Co. (In re A.H. Robins Co.),* 839 F.2d 198, 199 (4th Cir.1988), *cert. dismissed sub nom., Joynes v. A.H. Robins Co.,* 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972; Collier on Bankruptcy, ¶ 553.03[1][b], Page 553–14 (15th ed.2001); But see *Avellino & Bienes v. M. Frenville Co., Inc. (In re M.*

*Frenville Co., Inc.)*, 744 F.2d 332 (3rd Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (advocating the state law accrual test). For purposes of establishing when a claim (11 U.S.C. § 101(5)) accrues under the Bankruptcy Code, the court is not limited to state law definitions of when a cause of action accrues and case law in support of determining whether a claim is pre-petition by the state law accrual test has been "widely criticized, and is generally not followed." See Collier on Bankruptcy, ¶ 553.03[1][b][i], Page 553–15 (15th ed.2001); *Grady* at 201 (criticizing accrual test); *In re Baldwin United Corp. (In re Baldwin–United Corp.)*, 57 B.R. 759 (S.D.Ohio 1985) (same); *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233 (9th Cir. BAP 1991) (same) An Ohio appellate court has even refused to apply the state law accrual test. *Curtis v. Payton*, 1999 WL 57763 (Ohio Ct.App. Feb. 5, 1999).

The federal courts have developed a number of tests, independent from state law, to determine whether a claim is pre-petition. All of these tests are based on the broad definition of claim [3] provided for in Bankruptcy Code and result in the conclusion the breach of contract claim of the debtor is pre-petition.

Under the conduct test, almost all of the conduct relating to the claim including the signing and issuance of the insurance contract, the defendant's knowledge of the claimed theft rings and the debtor's formal claim request under the policy were pre-petition. See *Grady*, 839 F.2d at 202. Lumbermen's only post-petition action was the denial of coverage. Roberds' post-petition filing of a proof of loss, as required by an insurance contract, does not change the pre-petition nature of Roberds' policy claim.

Applying the relationship test, it is clear the relationship between Roberds and Lumbermen's was formed by pre-petition agreements. The bonds were issued on behalf of Roberds pre-petition and the insurance contract was entered into pre-petition. The thefts also occurred pre-petition. *See United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1004 (2nd Cir.1991) ("In the context of contract claims, the Code's inclusion of 'unmatured' and 'contingent' claims is usually said to refer to obligations that will become due upon the happening of a future event that was 'within the actual or presumed contemplation of the parties at the time the original relationship was created.' ") (citations omitted) The post-petition filing of the Proof of Loss does not, under federal bankruptcy law, change the pre-petition nature of Roberds' claim.

Similarly, under a "foreseeability" test, it is evident that any insurer and insured can expect conduct which might occur pre-petition, such as a theft ring, would lead to potential liability under applicable insurance coverage. See *id.; In re National Gypsum Co.*, 139 B.R. 397 (N.D.Tex.1992). The only "future (post-petition) event" was the filing of the Proof of Loss. Thus, whether a conduct, relationship or foreseeability test is employed, the Debtor's breach of contract bankruptcy claim is properly characterized as pre-petition.

**3. Are The Claims of Roberds and Lumbermen's Both Pre–Petition Claims under Applicable Non–Bankruptcy Law?**

The determination of whether the claims of the Debtor and Lumbermen's

---

**3.** 11 U.S.C. § 101(5)(A) states that " 'claim' means—right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..."

are both pre-petition under Federal Bankruptcy Law is merely a starting point on the continuum which leads to a determination of whether setoff is appropriate. As noted, Section 553 of Bankruptcy Code preserves state law setoff rights, but does not create separate substantive rights. The requirement remains that any setoff must be consistent with applicable non-bankruptcy law. *Interstate Graphics*, 223 B.R. at 124. The parties dispute whether, under Ohio law,[4] the debtor's claim under the insurance policy is pre-petition or post-petition and, therefore, whether Lumbermen's can setoff the breach of contract (the policy) claim of Roberds against Lumbermen's claim for indemnification under the surety bonds. Under Ohio law, a setoff "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction." *Id., citing, Kleather*, 208 B.R. at 413. Roberds' position is, under Ohio law, Roberds did not have a pre-petition claim for a "definite amount" or any cognizable cause of action because the claim did not accrue until the "Proof of Loss Package" was filed. Roberds' argument continues that since the "Proof of Loss Package" was filed post-petition, Ohio law would not permit setoff.

The holding of the Ohio Supreme Court's decision in *Appel* has been a source of controversy between the parties in this adversary. *Appel v. Cooper Ins. Co.*, 80 N.E. 955, 76 Ohio St. 52 (1907). In *Appel*, the insured had a one year fire policy commencing June 19, 1901. The insurance provisions required the insured to file a proof of loss within sixty days and commence any actions within six months "after the fire." The fire occurred September 9, 1901. The proof of loss was filed October 10, 1901. The law suit was not commenced until June 4, 1902. The court found for the insurance company because the six month limitation period in the contract was not met; i.e. The insured failed to commence an action in court within six months *after the fire* (September 9, 1901). Thus, the court concluded that the time for the statute of limitations begins to run at the time of the triggering event, regardless of other time limitations, such as the time for the filing of a proof of loss.

*Appel* is not simply a case of contractual policy interpretation. It is a foundation of settled Ohio law that, in contract and tort, an action commences at the time of the triggering event, whether a fire, accident, or a warehouse theft under a crime insurance policy. The fact that every requirement under the policy to commence suit did not occur pre-petition is not a determining factor. The policy itself begins running a two year statute of limitations from the discovery of loss. See Commercial Crime Policy, Section B7c; Cf. *Plant v. Illinois Employers Ins. of Wausau*, 485 N.E.2d 773, 20 Ohio App.3d 236 (1984), paragraph one of syllabus ("... the phrase 'occurrence which gives rise to the claim' refers to the theft itself, not the date of the company's denial of liability....") Statute of limitations cases provide the best and clearest indication of Ohio law on the issue of when a cause of action accrues.

■■ In a recent case, the Sixth Circuit Court of Appeals noted that: "Ohio law holds that contractual limitations provisions in insurance contracts commence *the moment that the triggering event occurs*, regardless of other policy provisions requiring that certain conditions be fulfilled before the insured has a right to enforce the contract." *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir.1996) (emphasis supplied; citations

---

4. Both parties agree the appropriate non-bankruptcy law for setoff is Ohio law.

omitted) Consistent with compelling Ohio and Sixth Circuit authority, this court determines that insurance policy provisions may, in appropriate circumstances, set time limitations concerning when a Proof of Loss may be filed and what steps are required to recover under the policy; however, despite such provisions, Ohio law provides that the cause of action (the claim) accrues at the time of the loss. In this proceeding, the time of the loss occurred pre-petition. The court determines that both Lumbermen's indemnification claim under the bonds and Roberds' breach of contract claim in this adversary proceeding are pre-petition claims.

### 4. Does Mutuality Exist Between the Parties?

■ For setoff under Section 553, "mutuality" must exist. In order to have mutuality, " . . . the debts must be in the same right and between the same parties, standing in the same capacity." *Thompson v. Bd. of Trustees of the Fairfax Cty. Police Officers Ret. Sys. (In re Thompson)*, 182 B.R. 140, 152 (Bankr.E.D.Va.1995) (citations omitted). The parties do not dispute, and it does not appear to the court, that any question exists as to mutuality between the two parties. The dispute involves the same parties and insurance contract that existed pre-petition.

### 5. Do the Parties Owe a "Definite Amount" to Each Other?

Roberds argues that, even if both claims are pre-petition, setoff is not appropriate because, although Roberds does not dispute that Lumbermen's has actually paid $875,619.06 (an amount well in excess of breach of contract claim) on these bonds to third parties, a significant portion of these payments may have been improperly paid and/or may be subject to refund. Accordingly, Roberds alleges a factual dispute

exists as to the amount of any setoff that would preclude summary judgment.

The Ohio Supreme Court has held that:

■■■ "Indemnity * * * arises from contract, either express or implied, and is a right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Travelers Indemnity Co. v. Trowbridge*, 321 N.E.2d 787, 41 Ohio St.2d 11, Paragraph two of syllabus (1975), *overruled on other grounds, Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E.2d 235, 73 Ohio St.3d 391 (1995) It is also settled that, like any contract, an indemnity agreement is governed by its plain meaning:

> The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. All words must be taken in their ordinary and popular sense, and "[when] a * * * [writing] is worded in clear and precise terms; when its meaning is evident and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning * * * which * * * [it] naturally presents."

*Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256, 32 Ohio St.3d 238, 240—41 (1987) (internal citations omitted)

In reviewing the bonds in question and Ohio indemnity law, the court finds that the payments were all made pursuant to mandatory contractual obligations of Lumbermen's. The General Agreement of Indemnity [Mollenhauer Affidavit, Exhibit A] in Paragraph Two states that:

> The Indemnitors will indemnify and save [Lumbermen's] harmless from and against *every claim, demand*, liability, cost, charge, suit, judgment, attorneys' fees and expense which [Lumbermen's] may pay or incur by reason of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefor, or by reason of the failure of the Indemni-

tors to perform or comply with any of the covenants or conditions of this Agreement, in making any investigation on account thereof, in prosecuting or defending any action which may be brought in connection with any bond, in obtaining a release from liability and enforcing any of the agreements herein contained. *In the event of payments by [Lumbermen's], the Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of the Indemnitors liability therefor to [Lumbermen's].* (emphasis supplied)

Paragraph Five states that:

*[Lumbermen's] shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against [Lumbermen's] or [Roberds] shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.* (emphasis supplied)

The court has reviewed the bonds issued in favor of Florida—Dept. of Labor Employment Security, Division of Workers Compensation and Georgia—Self Insurers Guaranty Trust Fund.[5] The court finds nothing in any language of these bonds to contradict the General Agreement of Indemnity. All the evidence supports Lumbermen's position that bond payments were made as required by the indemnity agreements. See *Four Seasons Envtl., Inc. v. Westfield Cos.*, 638 N.E.2d 91, 93 Ohio App.3d 157 (1994).

### 6. Is There Evidence of a Refund of Bond Payments Sufficient to Create a Genuine Issue for Trial?

■ Roberds' final argument states that even if setoff is otherwise appropriate,

Lumbermen's motion for summary judgment must be denied since the amount of the bond payments may be subject to reduction by possible refunds from Florida and/or Georgia. As previously noted:

The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson,* 219 B.R. at 198, *citing, Hall,* 128 F.3d at 421–22 (internal citations omitted).

The fact that a refund may later occur does not change the Debtor's present and definite obligation to indemnify Lumbermen's for payments under the bonds. Further, Lumbermen's has stated that, in the event any funds are returned to Lumbermen's in excess of the amount claimed by Roberds, Lumbermen's will turnover any such funds over to Roberds. This representation by Lumbermen's will be enforced by the court.

Even assuming, *arguendo,* the General Agreement of Indemnity and the bonds created any material ambiguity of Lumbermen's contractual obligations, there is no evidence supplied by Roberds that demonstrate a genuine dispute of material fact

---

**5.** These payments on these two bonds by Lumbermen's constitute most of the total bond payments and exceed Roberd's breach of contract claim by a significant amount. The court does not deem it necessary to discuss the details of the smaller bond payments to resolve Lumbermen's motion for summary judgment.

exists for trial. See *Gibson*, 219 B.R. at 198. The United States Supreme Court has amplified the meaning of "materiality."

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2275, pp. 93–95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The deposition of Debra Johnson Compton (Vice President and Chief Administrative Officer of Florida Self Insurers Guaranty Association, Inc.) fails to provide evidence that any bond funds paid by Lumbermen's will be returned to Lumbermen's. [p. 65, I. 22–25] The claim process, under Florida law, will take at least two years or possibly longer. [p. 60—62; 68–69] Closed claims may even be re-opened. [p. 73] The February 15, 2002 letter [Exhibit 1 to Johnson Compton Deposition] of Ms. Johnson Compton reflects a December 31, 2001 "net known exposure" (i.e. potential future refund to Lumbermen's) and is based on "the currently known facts" at that time. The letter states that "It should be noted that all figures reflect December 31, 2001 data and are subject to change until such times

as all claims have been closed for a period of one year." Nothing in the February 15, 2002 letter or subsequent March 18, 2002 deposition of Ms. Johnson Compton shows a refund will occur, or even a time certain for that determination. Even drawing all inferences in favor of Roberds, there is no evidence in connection with any Florida bond payment refund sufficient to create a genuine issue for trial and defeat Lumbermen's motion for summary judgment.

Similar to the Florida situation, the deposition of John P. Reale (Administrator of Georgia Self–Insurers Guaranty Fund) fails to provide evidence that any funds will be returned to Lumbermen's. Mr. Reale stated only $70,500 of the $250,000 paid on the indemnity bond remained [p. 33]. As in Florida, Mr. Reale's deposition shows multiple open claims remain to be fully adjudicated. [p. 73–75] Roberds failed to establish any evidence from Mr. Reale from which a trier of fact could find that any Georgia bond payment would be returned to Lumbermen's:

Although Roberds places great weight on the evidence supplied by Steven G. Mollenhauer, Vice–President, Surety Counsel and Claims Manager for Lumbermen's, it fails to satisfy Roberds' burden as the non-moving party to present a genuine issue of material fact. In reviewing his deposition, Mr. Mollenhauer indicates he "hoped to get money back under those bonds [p. 19, I. 12 –13]." A significant amount of the deposition is Mr. Mollenhauer giving his legal interpretation of the meaning of the bonds. Specifically, Mr. Mollenhauer stated (later contradicted in his own affidavit) [Mollenhauer Affidavit, Paragraph 10] that past workers compensation obligations of the Debtor (i.e. before the effective date of the bonds) were not to be paid by Lumbermen's. The court concludes, based on the plain meaning of the

General Agreement of Indemnity and bonds, the funds paid by Lumbermen's to Georgia and Florida were proper. The Florida bond plainly states in paragraph two that: "The Surety undertakes and agrees that the obligations of this bond shall cover and extend to *all past, present and future liability* of [Roberds] .... [Mollenhauer Affidavit, Exhibit B] (emphasis supplied)" The Georgia bond is written in the broadest possible language and contains no conditions excluding coverage for past obligations: "WHEREAS, the intent of this bond is to ensure that the rights of the Principal's employees under the Georgia Workers' Compensation Act are protected, and the Principal's obligations to its employees under the act will continue to be met even if the Principal itself is unable to meet them for whatever reason [Mollenhauer Affidavit, Exhibit C]." Mr. Mollenhauer's deposition also demonstrated that, unlike Mr. Reale and Ms. Johnson Compton, he had no material understanding of the processes for resolving workers compensation claims for Georgia or Florida. Assuming the conflict between Mr. Mollenhauer's affidavit and deposition could constitute a "scintilla of evidence," standing alone or in combination with all other evidence presented by Roberds, there is not evidence sufficient to create a genuine issue for trial.

Roberds has not provided the court with material evidence, from the entities responsible for any potential refunds of the bond payments made by Lumbermen's, that there will be any refunds, within any time certain, much less in any amount that would reduce Lumbermen's indemnification claim against Roberds to less than the amount claimed by Roberds in its cause of action for breach of contract.

### Conclusion

The Lumbermen's Mutual Casualty Company's Motion for Summary Judg-ment on the Setoff Claim [Adv. Doc. 50–1] is **GRANTED** in an amount at least equal to the amount requested by Roberds' cause of action for breach of contract. [Adv. Doc. 1–1; First Cause of Action]

**SO ORDERED.**