**In re R.H. MACY & CO., INC., et al., Reorganized Debtors.**

**Federated Department Stores, Inc. f/k/a R.H. Macy & Co., Inc., and Macy's Prime Real Estate Inc., Plaintiffs,**

v.

**Wongco, a partnership, Defendants.**

**Bankruptcy No. 92 B 40477(BRL).**
**Adversary No. 98–9273.**

United States Bankruptcy Court,
S.D. New York.

July 14, 1999.

Jones, Day, Reavis & Poque, New York City, Attn: Cindy E. Tzerman, for the Reorganized Debtors.

Edwards & Angell, New York City, Attn: Sandra A. Reimer, for Wongco.

Kornfield, Paul & Bupp, P.C., Oakland, CA, Attn: Irving J. Kornfield, Eric A. Nyberg, for Wongco.

*MEMORANDUM DECISION PARTIALLY GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF AND GRANTING DEFENDANT'S MOTION TO DISMISS CERTAIN CAUSES OF ACTION*

BURTON R. LIFLAND, Bankruptcy Judge.

Federated Department Stores, Inc. ("Federated") (formerly known as R.H. Macy & Co., Inc. ("Macy's")) and Macy's Primary Real Estate Inc. (together with Federated and Macy's, the "Debtors") commenced the instant adversary proceeding against Wongco, a landlord of the Debtors, seeking (i) a preliminary injunc-

tion prohibiting Wongco from pursuing an action it had filed in Superior Court of the State Court of California (the "California Action"); [1] (ii) an order compelling Wongco to dismiss the complaint (the "Complaint") it filed in the California Action; and (iii) a finding of civil contempt for violation of this court's orders.[2] Wongco has cross-moved to dismiss the adversary proceeding.

## BACKGROUND

### The Lease and the First Reassessment

On July 5, 1945, Wongco's predecessor-in-interest entered into a thirty-five year lease (the "Lease") with Macy's, as lessee, for real property located in California (the "Property"). On January 1, 1977, the Lease was renewed for a period of thirty-nine years ending December 31, 2015. Article Twelfth (hereafter "Article Twelve") of the Lease requires the lessee to reimburse the lessor for property taxes based on a formula set forth in that Article within 10 days after the delivery by the Debtors of its annual report.

In 1986, pursuant to a leveraged buyout, R.H. Macy & Co., Inc. assigned the Lease to Macy's California, Inc. The assignment effected a reassessment [3] of the Property (the "First Reassessment"), for the tax years 1986–1993.[4] A reassessment notice was issued to Wongco in August of 1994 and a notice of taxes due was sent in November of 1994. Wongco unsuccessful-

ly challenged the assessment and eventually paid $2,676,232.96, plus an additional $742,728.06 in interest. Wongco paid one-half of the property tax on December 10, 1994 and the other one-half on April 10, 1994.

### The Bankruptcy Proceedings and the Second Reassessment

On January 27 and 31, 1992, Macy's and certain relevant affiliates filed chapter 11 petitions for relief under title 11 of the United States Code (the "Bankruptcy Code"). On October 24, 1994, this court entered an order (the "Lease Procedures Order"), authorizing Macy's, all of Macy's relevant affiliates and Federated, as plan co-proponents, to mail notices of assumption to any non-debtor party to an executory contract that was proposed to be assumed or assumed and assigned pursuant to a plan of reorganization. The notice of assumption was to include the cure amount and procedures to object to the cure amount, assumption or assumption and assignment. The Lease Procedures Order provided that, unless objections were filed and except as provided in the notice of assumption:

   (a) the [non-debtor party to an executory contract] will be bound by the cure amount set forth in the assumption notice . . .;

   (b) any claim scheduled by the Debtor or any proof of claim relating to the

---

1. In the California Action, Wongco seeks reimbursement for real property taxes and, as set out more fully below, seeks other damages based on tort and breach of contract.

2. The Debtors argue that Wongco violated the injunctions contained in this court's confirmation order and an order relating to assumption of non-residential real property leases.

3. The property taxes in this case were assessed using the enterprise value of the premises. The enterprise value was determined by assessing the market value of the Macy's enterprise and prorating that value by the square footage of the leased premises. The Complaint is partly based on Wongco's assertion that Article Twelve only requires that it to

pay property taxes based on the *land* and the *building* and not property taxes based on enterprise value.

4. According to Wongco's statement of the law, valuations of real property for the purposes of the California property tax system were frozen in time in the 1970's subject only to a two-percent per year increase, unless the property is transferred. If transferred, the property is subject to reassessment. If a notice of transfer ("Notice of Transfer") is filed with the appropriate authority then the reassessment statute of limitations is four years, otherwise, it is eight years. A lease entered into with a term longer than thirty-five years is considered a transfer for California real property tax assessment purposes.

Debtors' obligations under the Assumed Agreement will be disallowed to the extent that such claim is based on obligations under such agreement; and

(c) the [non-debtor party to an executory contract] would be forever barred, estopped and enjoined from (i) asserting any claim against the Debtors or reorganized Debtors based on any defaults that may presently exist under the applicable Assumed Agreement, (ii) asserting any other claims arising from the Assumed Agreement prior to the date of the commencement of the applicable Debtor's chapter 11 case, and (iii) objecting to the proposed assumption or assumption and assignment on any grounds.

*Lease Procedures Order,* ¶ 3.

The Debtors sent a notice of assumption to Wongco (the "Assumption Notice") on October 19, 1994, thereby assuming the lease.[5] The Assumption Notice provided that:

The cure amount does not include any amounts that may otherwise be owed by the Debtors to you or any amounts in respect of future obligations under the contracts, which will be performed by the Debtors as and when such future obligations become due. Your right to seek to collect from the Debtors any amounts that do not relate to the contracts or that relate to future obligations

under the contract is not affected by this notice.

*Assumption Notice,* ¶ 2.

By order dated December 8, 1994 (the "Confirmation Order"), this court confirmed the Second Amended Joint Plan of Reorganization (the "Plan") of the Debtors. Pursuant to the Plan, the Debtors merged into Federated.

The Confirmation Order "discharge[d] the Debtors from all Claims or other debts that arose before the Effective Date [of the Plan]," except as provided in the Plan. *Confirmation Order,* III.G.1. The Confirmation Order provides for a permanent injunction barring all persons from taking any action to enforce claims or debts discharged or barred by the Plan, except as provided in the Plan. *Confirmation Order,* III.G.2. With respect to the merger, the Plan provides:

The Plan Proponents ... will neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the ... implementation, Confirmation or consummation of the Plan, ... or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan.

*Plan,* Art. XII.B.

However, the foregoing limitation on liability arising out of the merger is itself limited by the provision that:

5. In a post-argument brief, Wongco claims that it never received this notice because it was sent to an incorrect address. However, the Debtors re-sent the notice on February 15, 1995, and Wongco admits to receiving this notice. Wongco failed to raise this argument in either its papers submitted before oral argument or in oral argument itself. After oral argument while the motion was under submission, the parties agreed to mediate their dispute. Following an unsuccessful mediation, the Debtors submitted a "letter brief." In response to the letter brief, Wongco submitted its own letter brief and *supplemental affidavit* arguing that it had never received the first notice. In reply, the Debtors submit-

ted yet another letter brief requesting that Wongco's response letter brief be stricken as, *inter alia,* raising new arguments. None of the post-argument briefing is provided for under the rules nor authorized by this court. This matter had been fully briefed and argued before mediation and this court finds the post-mediation briefing inimical to the process of mediation and an unwarranted use of that process as a further discovery tool to raise new arguments. At no time did either party move for re-argument. Arguably, if the notice issue was discovered during mediation discussions, Federal Rule of Evidence 408 prohibits its use. All post-mediation briefing is, therefore, stricken.

"the foregoing provisions of this Section XII.B. will have no effect on: (1) the liability of any entity that would otherwise result from failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release, indenture or other agreement or document to be delivered or distributed in connection with the Plan. . . ."

*Plan,* Art. XII.B.

With respect to executory contracts, the Plan provides:

Executory Contracts and unexpired leases entered into or assumed and other obligations incurred after the Petition Date by any Debtor will be performed by the Debtor or reorganized Debtor liable thereunder in the ordinary course of business. Accordingly, such executory contracts, unexpired leases and other obligations will survive and remain unaffected by entry of the Confirmation Order.

*Plan,* Art. V.E.

Federated's assumption of the Lease under the Plan effected a second assessment (the "Second Reassessment") for tax years 1994 through 1998. Wongco paid one-half of the assessment in December of 1998 and the remaining one-half of the payment came due in April of 1999.[6]

On August 4, 1998, Wongco commenced the California Action seeking (a): damages for (1) breach of contract based on the Debtors' failure to reimburse Wongco for the First Reassessment and the Second Reassessment (the "First Cause of Action"); (2) breach of contract for the Debtors' failure to reimburse Wongco for additional taxes based on the formula provided under Article Twelve (the "Second Causes of Action"); (3) breach of the covenant of good faith and fair dealing (the "Third Cause of Action"), and negligence (the "Fourth Cause of Action"), for the Debtors' failure to file a Notice of Transfer with the proper California authority; (4) breach of contract (the "Fifth Cause of Action"),

for the Debtors' failure to obtain Wongco's consent in assigning the Lease to Macy's California, Inc.; and (b) a declaratory relief finding that the Debtors are required to reimburse Wongco for property taxes as of 1986 and for future years and that the Debtors' failure to obtain consent from Wongco prior to assignment was a breach of contract (the "Sixth Cause of Action"). On September 24, 1998, the Debtors commenced the instant adversary proceeding seeking (i) to preliminarily enjoin Wongco from pursuing its claims, (ii) to order Wongco to dismiss the Complaint with prejudice, and (iii) a finding that Wongco is in civil contempt for violation of this court's orders. Wongco has filed a cross-motion to dismiss the adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b) for failure to state a claim upon which relief can be granted.

## DISCUSSION

### Preliminary Injunction Standards

The standards set forth by the Second Circuit for the issuance of a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, require that the party requesting preliminary relief demonstrate both irreparable harm and either (1) a likelihood of success going to the merits or (2) a sufficiently serious question regarding the merits to make it fair ground for litigation, with the balance of hardships tipping decidedly in its favor. *See NAACP, Inc. v. Town of East Haven,* 70 F.3d 219, 223 (2d Cir.1995).

The most logical way to determine whether the California Action is barred by certain injunctions contained in the Confirmation Order, Plan and Lease Procedures Order is to divide the causes of action in the Complaint into two categories. For reasons explained more fully below, this decision will look, first, to the Third, Fourth and Fifth Causes of Action and,

---

**6.** It is not clear whether Wongco paid the second installment.

second, to the First, Second and Sixth Causes of Action.

*The Third, Fourth and Fifth Causes of Action* [7]

The substance of the Debtors' arguments, with respect to the Third, Fourth and Fifth Causes of Action, is that Wongco's causes of action are prepetition claims barred by the Lease Procedures Order, Plan and Confirmation Order.

Section 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, *unmatured*, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A) (1994) (emphasis added). Congress altered the definition of "claim" when it enacted the Bankruptcy Code. In explaining the intended definition of "claim" under the Bankruptcy Code, the House and Senate Reports provide "[b]y this broadest possible definition [of claim] . . . all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95–595, at 309 (1977); S.Rep. No. 95–989, at 21 (1978). *See also Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

■■■ Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition. *See In re Chateaugay Corp. (LTV Steel Co. v. Shalala)*, 53 F.3d 478, 496 (2d Cir.1995) (further stating that "a claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts"). "A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation—'a right to

payment'—under the relevant non-bankruptcy law." *Id.* at 497 (citing *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992)). While the existence of a claim is governed by non-bankruptcy law, the determination of when a claim arises is governed by the Bankruptcy Code. *See Shalala*, 53 F.3d at 497 (stating that the language of the Bankruptcy Code would determine whether the creditor's right to payment existed at the time of the filing of the debtor's petition); *National Gypsum*, 139 B.R. at 405 ("While non-bankruptcy law governs the existence of a claim under the Bankruptcy Code, it is not dispositive of the time at which a claim arises under the Bankruptcy Code.").

■■■ Because contingent and unmatured rights of payment are "claims" under the Bankruptcy Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Bankruptcy Code. A contingent claim within the meaning of section 101(5) is a debt that "does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo (Mazzeo v. United States)*, 131 F.3d 295, 303 (2d Cir. 1997). Under section 101(5)(A) and the applicable case law, each of Wongco's Third, Fourth and Fifth Causes of Action constitute contingent, unmatured rights to payment and, thus, are claims discharged by the Plan and Confirmation Order.

A claim exists if, before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation. *See Shalala*, 53 F.3d at 497. The Lease was entered into in 1945. The alleged acts which give rise to the causes of action occurred on or about 1986. All of the elements with re-

---

7. These causes of action, as formerly defined, refer to causes of action in the California

Action as distinguished from the Debtors' claims for relief in this adversary proceeding.

spect to the Third, Fourth and Fifth Causes of Action were present on the date the Debtors filed the petition. Thus, the Third, Fourth and Fifth Causes of Action relate to prepetition claims discharged by the Plan, Confirmation Order and Lease Procedures Order. Wongco points to no applicable exemption or carve-out in the language of these injunctions or elsewhere in the Plan, Confirmation Order or Lease Procedures Order that would continue the Debtors' liability for these acts or omissions. Additionally, the Lease Procedures Order required Wongco to assert any other claims arising from the Assumed Agreement prior to the date of the commencement of the Debtors' chapter 11 cases by a date certain or be forever barred from asserting such claims.

Importantly, Wongco had actual and constructive notice of the elements giving rise to the Third, Fourth and Fifth Causes of Action before confirmation and assumption of the Lease. Specifically, the First Reassessment notice was sent in August of 1994 and Wongco was on notice of the Lease assignment and the alleged failure to file a Notice of Transfer before the 1986 assumption. Wongco was on notice of these potential claims pre-assumption and preconfirmation, failed to assert these claims, and is now barred from asserting such claims by the Plan, Confirmation Order and Lease Procedures Order.

For all of the above reasons, the Debtors are entitled to injunctive relief as to Wongco's continuation of the California Action with respect to the Third, Fourth and Fifth Cause of Action.

*The First Cause of Action & the Second Cause of Action* [8]

a. "Future Obligation"

■ The First Cause of Action can be broken down into two parts, the First Reassessment and the Second Reassessment. The vast majority of the tax years at issue in the First Reassessment are

prepetition tax years. Thus, the Debtors argue that any alleged requirement of reimbursement of the First Assessment constitutes a prepetition claim discharged by the Plan and Confirmation Order. Nonetheless, while the Debtors are correct that the acts and lease are both prepetition events, certain language in the Assumption Notice and Plan prevents discharge of this debt and the Second Cause of Action under the Plan, Confirmation Order and Lease Procedures Order.

The language at the heart of the issue before me is the Debtors' representation in the Assumption Notice that "[t]he cure amount does not include ... any amounts in respect of future obligations under the contracts, which will be performed by the Debtors as and when such future obligations become due." "Future obligations" is not a defined term in the Bankruptcy Code or Assumption Notice. While the term is not defined either statutorily or by the documents at issue, all parties were on notice of a definition as it relates to this case.

On April 23, 1993, I issued a decision (the "1993 Decision") in this case requiring the Debtors to pay a different landlord for tax assessments for prepetition tax years that came due postpetition because they were in the nature of "obligations" rather than "claims" under section 365(d)(3) of the Bankruptcy Code. *In re R. H. Macy & Co., Inc.,* 152 B.R. 869 (Bankr.S.D.N.Y. 1993), *aff'd sub nom., Bullock's Inc. v. Lakewood Mall Shopping Center (In re R.H. Macy & Co., Inc.),* 1994 WL 482948 (S.D.N.Y.). In the 1993 Decision, as is the case in this adversary proceeding, the tax assessments were allegedly reimbursable under the lease. The district court affirmed the 1993 Decision (the "1994 Affirmance"), finding the term obligation to be broad and distinct from the term claim. *Bullock's Inc. v. Lakewood Mall Shopping Center (In re R.H. Macy & Co., Inc.),* 1994 WL 482948, *12–13 (S.D.N.Y.). The dis-

---

8. These causes of action, as formerly defined, refer to causes of action in the California

Action as distinguished from the Debtors' claims for relief in this adversary proceeding.

trict court rendered the 1994 Affirmance just eight months prior to the entry of the Lease Procedures Order. It is incomprehensible that the Debtors would have assigned a different meaning to the term "obligation" in the Lease Procedures Order and Assumption Notice other than that determined by the 1993 Decision and 1994 Affirmance. Based on these decisions, the Debtors' argument that they intended a narrow definition of obligations is fundamentally unsupportable.

The 1993 Decision and the 1994 Affirmance were based strictly on the language of section 365(d)(3) and are not in themselves dispositive of the issue before me. The issue before me relates to interpretation of the Lease Procedures Order and the Assumption Notice and the meaning of "obligations" as they are used in *those* documents. While not dispositive, the broad interpretation of the term "obligation" in both 1993 Decision and the 1994 Affirmance provides a sound basis for Wongco to rely on that definition in the context of the Assumption Notice.

■ Furthermore, section 365(b)(1) of the Bankruptcy Code provides that if there has been a default the trustee may not assume a lease unless the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default. *See* 11 U.S.C. § 365(b)(1) (1994). By its terms, section 365(b)(1) requires that the trustee cure present defaults, not defaults that are not yet in existence. As it would be atypical for a trustee to include future obligations in the cure amount, if a trustee wanted to include contingent, unmatured debts in a cure prior to assumption, it would be incumbent on the trustee to state with some degree of clarity that these debts were to be included.

In sum, future obligations as it was used in the Assumption Notice means debts not yet payable pursuant to the terms of the applicable contract as of the date of assumption.

b. Why the First and Second Causes of Action are Alleged Obligations

■ The First Cause of Action, while broadly worded, appears to be based on Article Twelve of the Lease as is the Second Cause of Action.[9] In the First Cause of Action, Wongco asserts by inverse argument that the Debtors are liable for property taxes because according to Article Twelve, Wongco is not. Regardless of the creativity employed by Wongco in the First Cause of Action, it is based on alleged rights obtained under the Lease. The Debtors argue that the First Cause of Action is really a pre-assumption default of lease obligations and was included in the cure of defaults under the lease. The Debtors' argument relies on the August notice of assessment as the point that the Debtors' default arose. This argument fails because, while there was notice of an assessment in August, there was no obligation to pay taxes at that point. *See Bullock's,* 1994 WL 482948, *12–13 (S.D.N.Y.). The notice of taxes due was not sent until November 1994, one month after the Debtor sent its Assumption Notice. It was, therefore, not a present default as defined by the language of the Lease Procedures Order but a future obligation as provided for in the Assumption Notice.

The Plan provides that "unexpired leases and other obligations will survive and remain unaffected by entry of the Confirmation Order." The Assumption Notice provides that "the cure amount does not include any amounts ... in respect of future obligations under the contracts, which will be performed by the Debtors as and when such future obligations become due. Your right to seek to collect from the Debtors any amounts that do not relate to the contracts or that relate to future obligations under the contract is not affected by this notice."

9. The Second Cause of Action is clearly based

in the Article Twelve of the Lease.

The Debtors have not shown that the Lease Procedure Order, Plan and Confirmation Order bar Wongco from seeking reimbursement liability arising from the First Reassessment. The cure requirements of section 365(b)(1), the language in the Assumption Notice continuing the Debtors' liability for "future obligations," the failure of the Debtors to define the term "claim" as it is used in the Lease Procedures Order, and the 1993 Decision and 1994 Affirmance defining the term "obligation" all lead this court to conclude that Wongco is not barred from seeking reimbursement of the First Reassessment under Article Twelve of the Lease with respect to the First and Second Causes of Action.

As to the Second Reassessment, the Debtors base their argument on the exculpation of liability arising out of the merger provided in the Plan. As Wongco points out, this argument fails because this exculpation is limited with respect to executory contracts that have been assumed. Specifically, as noted above, the Plan provided that:

> Executory Contracts and unexpired leases entered into or assumed and other obligations incurred after the Petition Date by any Debtor will be performed by the Debtor or reorganized Debtor liable thereunder in the ordinary course of business. Accordingly, such executory contracts, unexpired leases and other obligations will survive and remain unaffected by entry of the Confirmation Order.

*Plan,* Art. V.E.

The Debtors have failed to show that liability arising out of the Second Reassessment was either of the type barred by the Plan provision limiting liability arising out of the merger or that such limitation of liability was not itself specifically limited by language imposing continued liability for assumed leases.

For all of the above reasons, the Debtors are not entitled to enjoin Wongco's continuation of the California Action with respect to the First and Second Cause of Action.

*The Sixth Cause of Action*

The Sixth Cause of Action is broken down into two sections. Section A requests a declaratory judgment that reassessments are the Debtors' obligation under the Lease. Consistent with my finding that the Debtors property tax obligations, if owed, were not discharged by the Plan, Confirmation Order or Lease Procedures Order, Section A of the Sixth Cause of Action is not barred.

Section B requests a declaratory judgment with respect to the Debtors' failure to obtain Wongco's consent to assignment of the lease in 1986. Section B of the Sixth Cause of Action is based on identical facts and legal theories as the Fifth Cause of Action and is barred for the same reasons, as set forth above.

*Wongco's Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) can be granted only where it appears certain that no set of facts could be proven at trial which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) *cited in Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985); *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 986, 991 (Bankr. S.D.N.Y.1982). All well-pleaded factual allegations must be read by the court as true and construed liberally in favor of the plaintiff. *Conley,* 355 U.S. at 47, 78 S.Ct. 99; *Allen v. WestPoint—Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The focus of the inquiry is whether the pleading is sufficient to entitle the claimant to offer evidence in support of his claims, not the likelihood of plaintiff's success. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Werner*

*v. Satterlee,* 797 F.Supp. 1196, 1206 (S.D.N.Y.1992).

In light of the court's decision with respect to the First, Second and Section A of the Sixth Cause of Action on the grounds discussed above, there could be no set of facts proven at trial which would entitle the Debtors to relief. As recognized by the parties at oral argument on January 20, 1999, the results of this Adversary Proceeding are governed by the documents provided to the court and there are no questions of fact which could be proven at trial which could support the Debtors' claims. Therefore, Wongco's motion to dismiss is granted as to its right to pursue the First, Second and Section A of the Sixth Cause of Action in the California Action.

*Civil Contempt*

A finding of civil contempt requires a showing that there exists an enforceable order that is clear and specific which unambiguously commands such party to perform or refrain from performing in accordance with the order. *See International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc.,* 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). I find that there are sufficient ambiguities under documents and facts as to prevent my finding Wongco in civil contempt.

*CONCLUSION*

For the reasons discussed above, the Debtors are entitled to injunctive relief as to Wongco's continuation of the California Action with respect to the Third, Fourth, Fifth and Section B of the Sixth Cause of Action. I find that the Third, Fourth, Fifth and Section B of the Sixth Cause of Action in the Complaint are barred by the Plan, Confirmation Order, Lease Procedures Order and Assumption Notice. With respect to the First, Second and Section A of the Sixth Cause of Action, I grant Wongco's motion to dismiss. I deny the Debtors request for a finding of civil contempt.

Settle an order consistent with this Memorandum Decision.