**In re Donald Joseph PARKS, Debtor.**

**No. 99–51909–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 5, 2002.

Karin F. Avery, West Bloomfield, MI, for debtor.

John Curley, David H. Freedman, Southfield, MI, for creditor.

Kenneth M. Schneider, Detroit, MI, for trustee.

*Opinion and Order Regarding Debtor's Motion for Sanctions Against Devon Title*

STEVEN W. RHODES, Chief Judge.

Devon Title Company filed a third-party complaint against the debtor, Donald Joseph Parks, after the discharge was entered. Parks then filed a motion for sanctions for violating the discharge injunction. The issue is whether Devon Title's claim against Parks arose before the bankruptcy case was filed and was therefore included in the discharge. The Court conducted a hearing on April 22, 2002, and took the matter under advisement.

The Court concludes that Devon Title's claim against the debtor did arise prepetition because based on the parties' existing relationship, the claim was then within Devon Title's fair contemplation. Therefore, Devon Title's third-party complaint did violate the discharge injunction and sanctions are appropriate.

## I.

In September, 1997, Carol and Mark DeVore entered into a contract with Vision Construction for the renovation of their home. Parks was a principal of Vision. The DeVores obtained a loan from Flagstar Bank. Flagstar purchased title insurance from Devon Title. Pursuant to the terms of the loan, in order to receive disbursements, Vision was required to furnish lien waivers to Devon Title. Parks, on behalf of Vision, certified to Devon Title that no money was owed to subcontractors for the work done on the DeVore residence. However, there were apparently several subcontractors who had not been paid and who placed liens on the DeVores' residence.

On July 28, 1999, Parks filed for chapter 7 relief. He listed as unsecured creditors Mark and Carol DeVore and Devon Title. The description of the claim to Devon Title was "Title work." Parks received his discharge on February 14, 2001.

On December 3, 2001, the DeVores filed a civil complaint against Flagstar Bank, Devon Title, Vision Construction, and Michael Allen Max (another Vision principal), alleging breach of fiduciary duties by the defendants. The complaint alleged that misrepresentations were made regarding the payment of subcontractors who worked on the construction of the DeVores' home and that the unpaid subcontractors filed liens against their home. The DeVores alleged that they were forced to expend additional funds to release the liens.

Devon Title filed a third-party complaint against Vision Construction, Michael Allen Max, Jack Grushko (a former Vision principal) and the debtor, Donald Parks, alleging that the third-party defendants made misleading statements to Devon Title and seeking indemnification for any damages awarded to the DeVores against Devon Title in the initial complaint.

## II.

■ Parks contends that the third-party complaint violated the discharge injunction because any claims that Devon Title may have had against him arose pre-petition and were, therefore, discharged in the bankruptcy.

Devon Title contends that because it had not sustained any damages from Parks's fraudulent conduct until the DeVores filed their complaint against Devon Title, which occurred after the bankruptcy discharge, its claim against Parks did not accrue pre-petition. Therefore, Devon Title argues, its claim was not discharged. Even if the claim arose pre-petition, Devon Title argues that it was excepted from discharge due to Parks's fraudulent conduct.

## III.

■ Pursuant to 11 U.S.C. § 727(b), a discharge in bankruptcy discharges the debtor from all debts that arose before bankruptcy. "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Congress intended the term "claim" to have the "broadest possible definition ... [including] all legal obligations of the debtor, no matter how remote or contingent." H.R.Rep. No. 95–595, at 649 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963. This policy promotes the debtor's fresh start. *See Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707–08, 83 L.Ed.2d 649 (1985).

■ A "contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liabil-

ity of the debtor to the alleged creditor.'" *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir.1987) (citations omitted). Thus, a right to payment need not be currently enforceable in order to constitute a claim that is dischargeable in bankruptcy. *See Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod. Corp.)*, 225 B.R. 862, 866 (Bankr.S.D.N.Y.1998) ("Because contingent and unmatured rights of payment are 'claims' under the Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Code."). *See also Kilbarr Corp. v. Gen. Servs. Admin. (In re Remington Rand Corp.)*, 836 F.2d 825, 832 (3d Cir.1988) ("[A] party may have a bankruptcy claim and not possess a cause of action on that claim.").

Devon Title relies on *In re Kilpatrick*, 160 B.R. 560 (Bankr.E.D.Mich.1993), for the proposition that the existence of a claim in bankruptcy is generally determined by state law. However, it is well settled that federal law governs *when* a claim arises. *See Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir.1998) ("The question of when a debt arises under the bankruptcy code is governed by federal law."). *See also Federated Dep't Stores, Inc. v. Wongco (In re R.H. Macy & Co., Inc.)*, 236 B.R. 583, 589 (Bankr.S.D.N.Y.1999); *Manville Forest Prod.*, 225 B.R. at 866; *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992).

■ For bankruptcy purposes, three approaches have emerged for determining when a claim arises. Under the most restrictive approach, referred to as the "right to payment" test, a claim does not arise for bankruptcy purposes until each element of the claim is established. *See Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3d Cir.1984). This is the minority view and has been widely criticized as inconsistent with the broad definition of "claim" intended by Congress. *See California Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930–31 (9th Cir. 1993) ("To hold that a claim ... arises only when there is an enforceable right to payment appears to ignore the breadth of the statutory definition of 'claim.'").

■ A second approach is the "debtor's conduct" approach. Under this approach, a claim arises when the conduct by the debtor occurs, even if the actual injury is not suffered until much later. *See Watson v. Parker (In re Parker)*, 264 B.R. 685, 697 (10th Cir. BAP 2001) ("[P]ursuant to the plain language of the statute, a claim will exist if some pre-petition conduct has occurred that will give rise to liability."); *Roach v. Edge (In re Edge)*, 60 B.R. 690, 705 (Bankr.M.D.Tenn.1986) (Claim arose at the time the patient received negligent treatment from the debtor dentist.); *In re Johns–Manville Corp.*, 57 B.R. 680, 690 (Bankr.S.D.N.Y.1986) (Claim for asbestos injury arises at time of sale of asbestos containing materials, not when claim for injury is made.); *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 993 (Bankr.E.D.Va.1986) (Claim for injury from Dalkon shield arises at time of shield insertion, not when shield causes injury.)

■ A third approach looks at whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. *See Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1577 (11th Cir.1995) ("The prepetition relationship test ... requires 'some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition

conduct and the claimant' in order for the claimant to hold a § 101(5) claim.") (citations omitted). *See also Jensen,* 995 F.2d at 930–31; *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1277–78 (5th Cir. 1994); *United States v. LTV Corp. (In re Chateaugay Corp.),* 944 F.2d 997, 1005 (2d Cir.1991) ("The relationship between environmental regulating agencies and those subject to regulation provides sufficient 'contemplation' of contingencies to bring most ultimately maturing payment obligations based on pre-petition conduct within the definition of 'claims.' "); *In re Correct Mfg. Corp.,* 167 B.R. 458, 459 (Bankr. S.D.Ohio 1994) (Lack of prepetition relationship precluded claim.).

This approach was followed in *Corman v. Morgan (In re Morgan),* 197 B.R. 892 (N.D.Cal.1996), *aff'd* 131 F.3d 147 (9th Cir. 1997) (Table). The issue before the court was when a fraud claim arose. In adopting this approach and rejecting the "debtor's conduct" approach, the court stated:

> [The] "fairly contemplated" test is the most appropriate of the above tests for determining when Corman's claim arose.... [A] creditor pursuing a fraud claim against a bankrupt presents a court with conflicting objectives.
>
> On the one hand is the objective of giving the debtor a fresh start. Providing debtors this fresh start is the overriding goal of the Code. The objective of giving debtors a fresh start therefore supports adopting a very broad definition "claim" in this case, perhaps even to the extent of adopting the "debtor's conduct" approach ....
>
> On the other hand is the objective of not allowing debtors to use the Code as a shield for fraudulent conduct. One way in which this objective manifests itself is the judicial doctrine which limits discharge to innocent debtors. Another way this objective manifests itself is

Code §§ 523(a)(2) and (4), which except debts for fraud from discharge.

> Adoption of the "fairly contemplated" test is the best way to balance the Code's fresh start policy, on the one hand, and its measured hostility to fraud, on the other. On the one hand, adoption of this test will serve the goal of giving debtors a fresh start by forcing all creditors who know or should know before confirmation of their fraud claims against the debtor to bring those claims in the bankruptcy case, thus allowing those claims to be resolved under the Code's special provisions for fraud and discharge. On the other hand, adoption of this test will prevent bankruptcy from being used as a shield for fraud by allowing fraud claims to go forward against debtors who concealed their fraud prior to discharge.

*Id.* at 898–899 (citations and footnote omitted).

For the reasons stated in *Morgan,* this Court adopts the "fair contemplation" approach to determine when the claim arose.

The Court further concludes that the potential that Devon Title might have a claim against Parks was within the fair contemplation of Devon Title before the bankruptcy was filed. Devon Title stated in its brief that its agreement with Flagstar required it to collect the certifications from representatives of Vision, affirming that certain work had been completed and that subcontractors had been paid. Thus, Devon Title had a prepetition relationship with Parks, a representative of Vision, and was in a position to ascertain whether the representations made by Parks were accurate. Devon Title could have confirmed the representations by contacting the subcontractors. Accordingly, the Court concludes that Devon Title's claim is a prepetition claim.

## IV.

██ Devon Title contends that even if the claim arose pre-petition, it was excepted from discharge under § 523(a)(2) due to Parks's fraudulent conduct. Pursuant to § 523(a)(3)(B), a discharge does not discharge a debtor from a debt:

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case* in time for such timely filing and request;

11 U.S.C. § 523(a)(3)(B) (emphasis added).

This debt was not specifically listed or scheduled. However, Devon Title was listed on the schedules and the matrix and thus received notice of the bankruptcy case. Because Devon Title had notice of the case, the exception to discharge found in § 523(a)(3)(B) does not apply. Devon Title argues that it did not have knowledge of its claim prepetition. However, the language of § 523(a)(3)(B) refers to knowledge of the *case*, not knowledge of the *claim*.

A similar issue arose in *Dole v. Grant (In re Summit Corp.)*, 109 B.R. 534 (D.Mass.1990). There, the defendant moved to dismiss an adversary complaint to determine dischargeability of debt as time-barred. In opposing the motion, the plaintiff argued that § 523(a)(3)(B) applied because she did not have knowledge of the contingent debt that was the subject of her adversary complaint until almost nine months after the expiration of the court's deadline for filing adversary complaints.

The court rejected the plaintiff's argument because the plaintiff had actual knowledge of the bankruptcy case prior to the deadline. *Id.* at 537. The court held that it was unnecessary for purposes of applying § 523(a)(3)(B) to determine when the plaintiff first learned of the specific debt. *Id.* The court stated that Rule 4007(c) is to be strictly interpreted and applied. *Id.* Because Rule 4007(c) is designed to further the fresh start policy of the Bankruptcy Code, and because § 523(a)(3)(B) provides the only exception to the time limitation and conditions of Rule 4007(c), the court was unwilling to except the plaintiff from the time constraints of Rule 4007(c) based on the plaintiff's lack of knowledge of the debt. *Id.* at 537–38. *See also In Reich v. Davidson Lumber Sales, Inc.*, 154 B.R. 324, 333 (D.Utah 1993); *Caffal Bros. Forest Prods., Inc. v. Braun (In re Braun)*, 84 B.R. 192, 194 (Bankr.D.Or.1986) (This "Court has not found any case which somehow explains away this proviso to § 523(a)(3)(B) to permit a creditor, who has timely notice or knowledge of the case but is unaware of the basis for a potential § 523(a)(4) complaint until after the Bankr.Rule 4007(c) statute of limitations has run, to file such a complaint under § 523(a)(3)(B).").

Accordingly, because Devon Title had notice of the bankruptcy case and did not timely file a complaint to determine the dischargeability of debt, the Court concludes that its debt was discharged.

## V.

██ Devon Title's attempt to collect the discharged debt violated § 524(a)(2). That section provides that the discharge of a debt "operates as an injunction against the commencement or continuation of an action ... or an act, to collect [or] recover such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The in-

tent of the permanent injunction is to effectuate one of the primary purposes of the Bankruptcy Code—to afford the debtor a financial "fresh start." *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir.1992).

In addition to requesting that the Court require Devon Title to dismiss him from the state court action, Parks also requests sanctions of $2,500 for Devon Title's violation of the discharge injunction.

Unlike § 362(h), which authorizes the recovery of actual damages, attorney fees, and punitive damages, § 524(a) does not expressly authorize any relief other than injunctive relief. However, "the modern trend is for courts to award actual damages for violations of § 524 based on the inherent contempt power of the court." *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir.1996) (citations omitted); *see also In re Miller*, 247 B.R. 224, 227 (Bankr.E.D.Mich.2000).

Parks has not provided the Court with any detail or documentation of his legal expenses. He will therefore be given 14 days to file and serve evidence supporting his claim for attorney fees. Devon Title will be given 14 days after service to file and serve a response. A hearing will be scheduled if necessary. The entry of a final order will be delayed pending resolution of the specific sanction to be imposed.

IT IS SO ORDERED.