**In the Matter of Janice L. DIXON, Debtor.**

**No. 99–53020–PJS.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

July 7, 2003.

228

Andrew L. Fanta, Washtenaw Legal Center, P.C., Ann Arbor, MI, for Debtor.

Basil T. Simon, Simon, Korachis, Stella & Zingas, P.C., Detroit, MI, trustee.

**OPINION REGARDING MOTION FOR ORDER DECLARING BANKRUPTCY DISCHARGE INAPPLICABLE TO ALLSTATE INSURANCE CO. AND/OR REINSTATING BANKRUPTCY TO ALLOW ADVERSARY PROCEEDING**

PHILLIP J. SHEFFERLY,
Bankruptcy Judge.

### I. Introduction

The Debtor filed a chapter 7 petition on August 18, 1999. An order of discharge was entered December 3, 1999, and the case was closed December 8, 1999. Prepetition, the Debtor's son was involved in a car accident while driving the Debtor's uninsured vehicle. Allstate Insurance Co. ("Allstate") paid benefits to the Debtor's son for injuries sustained in the accident. After a later investigation, Allstate determined that those benefits were paid in error, and asserted that the Debtor had made misrepresentations on her application for insurance. Unaware of the bankruptcy, Allstate initiated a suit on May 23, 2000 to recover the benefits. After receiving a default judgment on May 4, 2001 for $33,164.11 against the Debtor, Allstate proceeded with collection efforts. On October, 17 2001, the Debtor advised Allstate of the bankruptcy case and claimed that the order of discharge covered any debt related to the benefits. On March, 24, 2003, Allstate filed a motion to reinstate the bankruptcy case for the purpose of initiating an adversary proceeding to determine the dischargeability of the debt or, alternatively, for an order declaring that the discharge injunction under 11 U.S.C. § 524(a)(2) is inapplicable to the debt. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

The parties agree that the accident occurred August 15, 1998. According to Allstate, Michigan's no-fault law provides that a vehicle owner must reimburse the insurance carrier if the carrier has paid benefits arising from the owner allowing someone to use their uninsured vehicle. In addition, Allstate alleges that the Debtor made a material misrepresentation on her application for insurance when she failed to reveal that her son was a resident of her household, in which case he would have been ineligible to receive benefits. All-

state acknowledged that there was no debt owing by the Debtor as of the petition date, and it only became aware of the potential problem after Allstate investigated the matter "several months thereafter." Thus, Allstate argues that the debt may not be a debt that was discharged because it had not been incurred pre-petition. Alternatively, if the debt is a pre-petition debt, Allstate asserts that it did not have notice of the bankruptcy. If Allstate had notice, it states that it would have timely claimed the debt to be non-dischargeable under § 523(a)(2)(A). Allstate now asks for a determination that the May 4, 2001 judgment is enforceable as a post-petition debt or, in the alternative, that the case be "reinstated" (or, more accurately, reopened), for the purpose of filing an adversary complaint for non-dischargeability of a pre-petition debt.

The Debtor filed a response to the motion to reopen, asserting that Allstate's debt is a pre-petition debt. As such, the Debtor argues there is no reason to reopen the bankruptcy case pursuant to *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 468 (6th Cir.1998) ("In a Chapter 7 no-asset case ... reopening the case merely to schedule [an omitted] debt is for all practical purposes a useless gesture.") (quotation marks and citation omitted). Assuming Allstate's debt would have been discharged, because this was a no asset case, the Debtor concludes that there is no need to reopen the case to add Allstate as a creditor, because there would have been no distribution to creditors in any event. However, the *Madaj* decision is inapplicable in a case such as this where the debt is alleged to be non-dischargeable and the creditor is seeking to reopen the case to file a non-dischargeability complaint rather than a proof of claim. The Debtor also raises an equitable argument, based on Allstate having first received notice of the bankruptcy on October 17, 2001. Because

Allstate did not file its motion to reopen the case until March 24, 2003, seventeen months later, the Debtor concludes that Allstate has waived any opportunity it may have had to reopen the case. At a hearing held on the motion to reopen on May 9, 2003, the parties asked for time to submit post-hearing briefs, which the Court granted.

To summarize, there are three issues to be addressed: (1) whether the debt is a pre- or post-petition debt; (2) if the debt is a pre-petition debt, whether § 523(a)(3)(B) applies, such that the case should be reopened to allow Allstate to file a non-dischargeability complaint; and (3) even if the debt falls within § 523(a)(3)(B), whether Allstate nevertheless waived any right to file a non-dischargeability complaint by waiting seventeen months to file its motion to reopen the case after learning of the bankruptcy case on October 17, 2001.

## II. Discussion

### A. Is the Debt a Pre- or Post–Petition Debt?

Under 11 U.S.C. § 101(5), a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ...." "Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (citation omitted). Courts have been careful to distinguish between when a right to payment arises for bankruptcy purposes, and when the cause of action accrues. *See, e.g., Kilbarr Corp. v. G.S.A. (In re Remington Rand Corp.)*, 836 F.2d 825, 830–31 (3d Cir.1988) ("recogniz[ing] that a party may have a bankruptcy claim and not possess a cause of action on that claim" and noting, for

example, that "an indemnity or surety agreement creates a right to payment, albeit contingent, between the contracting parties immediately upon the signing of the agreement") (citations omitted).

Courts have developed different tests to determine when a claim arises for purposes of deciding whether it is a pre- or post-petition claim. The opinion in *In re Parks*, 281 B.R. 899 (Bankr.E.D.Mich. 2002) (J. Rhodes) is instructive. In the *Parks* case, the debtor was a principal of a construction company that had been engaged pre-petition to renovate a home. *Id.* at 901. The debtor mistakenly certified to the title company, also pre-petition, that all subcontractors had been paid. The debtor later filed for chapter 7 relief, and listed the homeowners and the title company as unsecured creditors. They did not file proofs of claim. The debtor received a discharge on February 14, 2001. On December 3, 2001, the homeowners filed a complaint against the title company and others because there were unpaid subcontractors. The title company then filed a third-party complaint against the debtor, alleging that he made misleading statements about the certification, and seeking indemnification. The debtor contended that the third-party complaint violated the discharge injunction. The title company argued that the homeowners' complaint was filed after the discharge, so its claim did not arise pre-petition, and thus was not discharged under § 727(b). *Id.*

The *Parks* court explained that "three approaches have emerged for determining when a claim arises." *Id.* at 902. The first, which is the most restrictive, is referred to as the "right to payment" test, under which "a claim does not arise for bankruptcy purposes until each element of the claim is established." *Id.* (citation omitted). "This is the minority view and has been widely criticized as inconsistent

with the broad definition of 'claim' intended by Congress." *Id.* (citation omitted). Under the second approach, termed "the debtor's conduct" approach, "a claim arises when the conduct by the debtor occurs, even if the actual injury is not suffered until much later." *Id.* (citation omitted). Finally, the "third approach looks at whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." *Id.* This has been alternately termed the "fair contemplation," "foreseeability," "pre-petition relationship," or "narrow conduct" test. *Id.*; *Roberds, Inc. v. Lumbermen's Mutual Casualty Co. (In re Roberds)*, 285 B.R. 651, 657 (Bankr.S.D.Ohio 2002); *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1577 (11th Cir.1995) ("The prepetition relationship test ... requires some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant in order for the claimant to hold a § 101(5) claim.") (citation omitted); Joe Lee, *Bankruptcy Service* § 19:276 (Law. Ed.2003) (differentiating the "conduct" theory, which uses "the date of the conduct giving rise to the claim," from the "narrow conduct" theory, which finds "a claim arises at the time of conduct only if the claimant had a specific relationship with the debtor at the time the conduct occurred").

The foreseeability test was applied by the court in *Roberds v. Lumbermen's Mutual*, a case involving insurance coverage. There, the defendant insurance company issued a commercial crime insurance policy to the plaintiff/debtor. 285 B.R. at 653. The debtor discovered an employee-run theft ring pre-petition, but did not complete its claim against the defendant under the policy until after filing a chapter 11

petition for relief. *Id.* at 653, 656. The debtor filed an adversary proceeding against the insurance company for an alleged breach of contract, and for tort claims based on its denial of coverage. *Id.* at 653. In addition to the debtor's claims, the insurance company had indemnification claims against the debtor arising out of the issuance of bonds in favor of the debtor for certain workers compensation, utility and other obligations. *Id.* at 655. The parties agreed that the insurance company's indemnification claim was a pre-petition claim. *Id.* at 656. As to the debtor's claims against the insurance company, the court concluded they were pre-petition claims under either the relationship test or the foreseeability test: "[I]t is evident that any insurer and insured can expect conduct which might occur pre-petition, such as a theft ring, would lead to potential liability under applicable insurance coverage." *Id.* at 657 (citations omitted); *see also In re Piper Aircraft,* 58 F.3d at 1577. Thus, at the inception of the insurer/insured relationship, it was foreseeable that the conduct of the parties could lead to potential liability. Other courts, in deciding which test to apply, have found that a claim based on fraud is best analyzed under the foreseeability test. *See In re Parks,* 281 B.R. at 903 (finding that the narrow conduct approach best suited a claim based on fraud, because it balanced the fresh start objective against debtors using bankruptcy as a shield against fraud claims); *Corman v. Morgan (In re Morgan),* 197 B.R. 892, 898 (N.D.Cal.1996) (same).

■ The Court agrees with other courts that have declined to apply the right to payment test because it conflicts with the broad definition of a "claim" under the Bankruptcy Code. *See Parks,* 281 B.R. at 902. On the other hand, the Court finds that the conduct and narrow conduct-

foreseeability tests are consistent with Congressional intent. The Court concludes that under either test, Allstate's claim is a pre-petition claim. The insurance contract was entered into pre-petition, so the parties had a pre-petition relationship. The Debtor made any alleged misrepresentations on her application pre-petition. The Debtor allowed her son to use her uninsured vehicle and the accident occurred pre-petition. Thus, Allstate had a right to payment (if at all) once it issued the insurance policy to the Debtor and the Debtor allowed her son to operate the uninsured vehicle. Allstate's claim is a pre-petition debt.

### B. Does § 523(a)(3)(B) Apply?

■ Because the Court has concluded that Allstate has a pre-petition claim, that claim was potentially discharged upon entry of the order of discharge on December 8, 1999. But Allstate alleges that its debt is of the kind that is non-dischargeable under § 523(a)(2)(A). That section excepts from discharge "any debt ... for money, property, [or] services ... to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition ...." The exception from discharge provided by § 523(a)(2)(A) is not automatic. Under § 523(c)(1), unless a creditor requests a determination that its debt is excepted from discharge under § 523(a)(2)(A), the debt "shall be" discharged. However, § 523(c)(1) on its face states that it applies "except as provided in subsection (a)(3)(B)". Under § 523(a)(3)(B), a debt of a kind specified in § 523(a)(2) that was neither listed nor scheduled in time to permit timely filing of a proof of claim and timely request for determination of dischargeability, is not discharged unless the creditor had notice or actual knowledge of the case in time for such timely filing and request.

The Debtor does not contest that Allstate was neither listed nor scheduled as a creditor, and first learned of the bankruptcy on October 17, 2001. Timely filing of a dischargeability complaint would have been sixty days after the first meeting of creditors, or November 29, 1999. It is undisputed that Allstate did not have notice or actual knowledge of the case in time to timely file a dischargeability request. Nor does the Debtor contest that Allstate did not have notice in time to file a proof of claim by the deadline set in Fed. R. Bankr.P. 3002(c). Therefore, Allstate may proceed under § 523(a)(3)(B). *Compare In re Parks*, 281 B.R. at 904 (finding that, because the title company had notice of the bankruptcy, the exception under § 523(a)(3)(B) did not apply).

■ In arguing against Allstate's ability to now file a complaint, the Debtor incorrectly assumes that the deadline to file such a complaint is determined under Rule 4007(c). However, because Allstate is proceeding under § 523(a)(3)(B) and *not* § 523(c), Rule 4007(b) applies: "A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule." One authority explained the operation of Rule 4007(b) as follows:

> The rule expressly contemplates that such dischargeability proceedings may be brought after the bankruptcy case is closed by providing that a case may be reopened, if necessary, to file a dischargeability complaint. The broad permissive language of the rule does not appear to give the bankruptcy court discretion to deny a reopening of the case for this purpose. Further, any filing fee which might normally be payable for the reopening of a case is to be waived when a case is reopened for the purpose of filing a dischargeability complaint ...
>
> ...
>
> Occasionally, courts have permitted creditors additional time to file complaints raising dischargeability issues normally subject to the time limits when a debtor seeks to list such creditors in the schedule after the original deadline has expired. Such special permission is unnecessary. Any creditor added after the deadline has expired may file a complaint requesting the court to determine dischargeability under Code section 523(a)(3) on the grounds that the creditor did not have actual notice of the case in time to have its debt held nondischargeable under paragraphs (2), (4), or (6) of section 523(a). Under Rule 4007(b), such a complaint may be filed at any time and, if the creditor can prove that but for the lack of notice its claim would have been found nondischargeable, the court will find the claim nondischargeable under section 523(a)(3).

9 *Collier on Bankruptcy* ¶ 4007.03 at 4007–6, ¶ 4007.04[3][a] at 4007–15 to –16 (15th ed. rev.2003) (footnotes omitted). The Debtor is correct that the time limits under Rule 4007(c) are to be strictly enforced and are not subject to enlargement other than as stated in the Rule. *See* Fed. R. Bankr.P. 9006(3). However, "§ 523(a)(3)(B) provides the only exception to the time limitation and conditions of Rule 4007(c) ...." *In re Parks*, 281 B.R. at 904 (citation omitted). The Court thus concludes that Allstate may proceed under § 523(a)(3)(B).

### C. Has Allstate Waived its Right to File a Non–Dischargeability Complaint?

The final issue raised is whether such relief is nevertheless barred, given that Allstate waited seventeen months after learning of the bankruptcy before filing its

motion to reopen the case. Debtor characterized this as Allstate having "waived" its opportunity by filing an "untimely" motion to reopen. Although not termed as such in the Debtor's pleadings, the Court views this as a laches argument. When asked at the May 9, 2003 hearing for an explanation of the seventeen-month delay, Allstate laid part of the blame on the Debtor. According to Allstate, when the Debtor's counsel provided written notification of the bankruptcy case on October 17, 2001, he also informed Allstate that he intended to file a motion to reopen the bankruptcy case on behalf of the Debtor to add Allstate as a creditor and amend the schedules. Allstate waited for the Debtor to do so, and then filed its own motion. Allstate did not explain why it waited almost a year-and-a-half before taking action. At the hearing, when the Debtor asserted that Allstate should be barred by laches, the Court specifically asked the Debtor for authority in support of the argument, and gave the Debtor the opportunity to address the matter in her post-hearing brief. Unfortunately, the cases that the Debtor cited dealt with situations, unlike the case at bar, where the creditor had knowledge of the case, and thus Rule 4007(c) applied. Still, the Debtor has asked that the Court use its equitable powers to determine that the time for Allstate to file its complaint has passed.

Rule 4007(b) clearly provides that complaints such as the one Allstate wishes to pursue "may be filed **at any time**." Fed. R. Bankr.P. 4007(b) (emphasis added). As a proceeding "other than under § 523(c)" of the Code, a complaint under § 523(a)(3)(B) falls within the scope of Rule 4007(b). The only remaining question then, is whether the "at any time" language in Rule 4007(b) is subject to modification by the equitable doctrine of laches. Although there is no published Sixth Circuit Court of Appeals decision that has

addressed this issue, it has been discussed at length within the Ninth Circuit Court of Appeals. In *Irons v. Santiago (In re Santiago)*, 175 B.R. 48 (9th Cir. BAP 1994), the plaintiff did not receive notice of the bankruptcy until three months after the time to file a dischargeability complaint had passed. *Id.* at 48–49. The debtor had not listed or scheduled the plaintiff as a creditor. *Id.* at 49. Nineteen months after receiving notice, the plaintiff filed a dischargeability complaint. There was no explanation in the opinion for the plaintiff's delay. The Bankruptcy Appellate Panel reversed the bankruptcy court's dismissal of the complaint, finding "Rule 4007(b) does not provide for any time limit for filing an action to determine dischargeability." *Id.* at 52; *see also In re Lyman*, 166 B.R. 333, 337 (Bankr.S.D.Ill.1994) (finding laches or estoppel did not require dismissal of dischargeability complaint despite one-year delay in filing the complaint after creditors received notice of the bankruptcy).

The ruling in *Santiago* was expanded in *Selinger v. Beaty (In re Beaty)*, 268 B.R. 839 (9th Cir. BAP 2001), *aff'd on other grounds*, 306 F.3d 914 (9th Cir.2002). In this case, the plaintiff had filed a state court complaint in 1991 against unidentified defendants. 268 B.R. at 841. While that case was proceeding, the debtor filed a chapter 7 petition later that year. The debtor did not list the plaintiff as a creditor because the creditor's identity was unknown to the debtor. At some point, an order was entered in the state court case substituting the debtor as a named defendant. The state court entered a default judgment against the debtor in 1993, finding that he had been properly served. The debtor then notified the state court of the bankruptcy and discharge. Over one year later, the plaintiff filed a § 727 complaint, which was eventually dismissed as

untimely. After the dismissal was upheld on appeal, the plaintiff then filed a § 523(a)(3)(B) complaint, almost six years after the bankruptcy petition date. *Id.* at 841–42. The debtor moved to dismiss the complaint, asserting laches. The court denied the motion based on the "at any time" language in Rule 4007(b), and noting although the plaintiff's

> failure to act more promptly is questionable, [the court was] not at liberty to rewrite the plain language of the Code or the Rules.... A laches defense to the filing of a § 523(a)(3)(B) complaint is in conflict with Rule 4007(b) and therefore is inappropriate....
>
> The Rules also provide a debtor with a way to escape the apparent § 523(a) dilemma of having to face a nondischargeability action years after a discharge has been granted. Rule 4007(a) allows a debtor to bring an action to determine the dischargeability of a debt. Here, [the debtor] could have brought an action to determine the dischargeability of the Default Judgment and averted the years of delay that arguably prejudiced him. Because [the debtor] did not utilize this option, he cannot now complain that he has been unjustly treated.

*Id.* at 846 (citations omitted).

The debtor appealed to the Ninth Circuit Court of Appeals, which characterized the issue as "whether § 523(a)(3)(B), as implemented by Rule 4007(b), allows the equitable doctrine of laches as a defense." 306 F.3d at 922. The court answered that question in the affirmative. *Id.* at 923. The court reasoned that this conclusion was consistent with the "two fundamental tenets of bankruptcy law": (1) "secur[ing] prompt and effectual administration and settlement of the estate" and (2) a bankruptcy court is a court of equity and should invoke equitable principles, refusing to do so only when inconsistent with

the Bankruptcy Code. Therefore, the court concluded that laches is available as a defense to § 523(a)(3)(B) actions. *Id.* at 922. "These two principles combine to create a presumption that the equitable doctrine of laches, which has as its goal the prevention of prejudicial delay in the bringing of a proceeding, is a relevant and necessary doctrine in the bankruptcy context." *Id.* However, having reached that determination, the court still cautioned that "bankruptcy courts [should] be especially solicitous to § 523(a)(3)(B) claimants when laches is invoked, and to refuse to bar an action without a particularized showing of demonstrable prejudicial delay." *Id.* at 926. In applying the elements of laches to the facts of that case, the court found the plaintiff had diligently pursued his action against the debtor, and the debtor's "conclusory" and "generic claims of prejudice" were insufficient to support a finding of prejudice. *Id.* at 927–28.

Although laches has been recognized as a defense to a § 523(a)(3)(B) action, despite the phrase "at any time" contained in Rule 4007(b), the Ninth Circuit Court of Appeals has concluded that the appropriate place to assert that defense is not in response to a motion to reopen a case. In *Staffer v. Predovich (In re Staffer)*, 306 F.3d 967 (9th Cir.2002), the plaintiff initiated a civil action against the debtor prepetition. *Id.* at 969. Although the debtor did not schedule the debt or list the plaintiff on the matrix, the plaintiff learned about the case shortly after the deadline for filing § 523 complaints had passed. Six years later, the plaintiff filed a motion to reopen the bankruptcy case. *Id.* at 970. The debtor raised the defense of laches in response. The bankruptcy court denied the motion to reopen, finding that the plaintiff should have acted "immediately or promptly, and certainly within a reasonable time" upon receiving notice of the

case. *Id.* The Bankruptcy Appellate Panel reversed, concluding that the motion could be filed "at any time" under Fed. R. Bankr.P. 4007(b), and the Ninth Circuit affirmed. The court went on to address the debtor's laches defense, agreeing with the appellate panel that the time for considering such an argument is as part of the dischargeability complaint, and not as a defense to the motion to reopen.

[The debtor] appears to argue both that laches bars the preliminary motion to reopen, and that laches bars the underlying § 523(a)(3)(B) action that [the plaintiff] ultimately seeks to bring. The bankruptcy court collapsed the two questions into one. Under its reasoning, if the underlying action is barred by laches, a motion to reopen should not be granted. The BAP reached a contrary conclusion. It held that the question of whether [the debtor] could successfully assert the affirmative defense of laches to [the plaintiff]'s nondischargeability action was an extraneous issue at the motion-to-reopen stage, and was not properly addressed prior to the filing the complaint. We agree with the BAP. ... [A]lthough it is tempting to say that the reopening motion entitles the court to perform a gatekeeping function that justifies inquiring in to the related relief that will be sought, such inquiries are in fact inappropriate.... The better practice is the procedurally correct one of requiring merits issues to be left to the underlying litigation.... In short, the motion to reopen legitimately presents only a narrow range of issues ... Extraneous issues should be excluded.

*Id.* (internal quotation marks and citation omitted).

Thus, the Ninth Circuit decision in *Staffer* allowed for the possibility that laches could be asserted, but only as a defense to a § 523(a)(3)(B) nondischargeability complaint and not as a defense to a motion to reopen a bankruptcy case. In an unpublished opinion, the Sixth Circuit cited favorably to the *Staffer* opinion on the issue of the proper time for a court to consider a laches defense to a motion to reopen to file a § 523(a)(3)(B) complaint, finding that the issue should be resolved as part of the underlying dischargeability litigation in the adversary complaint. *Kowalski v. Romano (In re Romano)*, 59 Fed.Appx. 709, 711 (6th Cir.2003). Although not binding, this is an indication of how that court may rule on the issue.

 In sum, there is persuasive, but not binding, case law that addresses the laches issue raised by the Debtor. This Court agrees with the reasoning employed by the Ninth Circuit in the cases discussed above and holds that the Debtor's assertion of laches does not defeat Allstate's motion to reopen the bankruptcy case for the purpose of filing of a § 523(a)(3)(B) complaint. Therefore, the Court will enter an order reopening the Debtor's bankruptcy case under § 350 of the Bankruptcy Code for that purpose. However, the Court does not reach the question of whether laches may be asserted by the Debtor as a defense to the § 523(a)(3)(B) complaint as that issue is not properly before this Court. In this circuit, laches requires an "unexcused or unreasonable delay" that is prejudicial to a party. *Ruiz v. Shelby County Sheriff's Department*, 725 F.2d 388, 393 (6th Cir. 1984) (citation omitted). Whether the Debtor should be permitted to assert such defense, or is able to establish the elements of such defense, is best left to the litigants in the adversary proceeding as suggested by the court in *Staffer*, 306 F.3d at 972.

Accordingly, pursuant to § 350 of the Bankruptcy Code and Fed. R. Bankr.P. 4007(b), the Debtor's motion to reopen this

case for the purpose of filing a § 523(a)(3)(B) complaint is hereby granted. Allstate shall submit an order to the Court consistent with this opinion.